LEROY JOHNSON, PLAINTIFF-RESPONDENT, v. NEW JERSEY STATE PAROLE BOARD, HONORABLE NICHOLAS D. HEIL, CHAIRMAN; NEW JERSEY STATE CORRECTION AND PAROLE DIVISION, HONORABLE WILLIAM J. FAUVER, DIRECTOR; NEW JERSEY STATE PAROLE BUREAU, HONORABLE NAT J. ARLUKE, CHIEF; AND NEW JERSEY STATE PRISON AT TRENTON, HONORABLE RICHARD SEIDL, ACTING SUPERINTENDENT, DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued November 25, 1974—Decided December 20, 1974.

514

Before Judges Michels, Morgan and Milmed.

*Mr. Joseph T. Maloney,* Deputy Attorney General, argued the cause for appellants (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney; *Mr. Stephen Skillman,* Assistant Attorney General, of counsel).

*Mr. Robert J. Konzelmann,* Assistant Deputy Public Defender, argued the cause for respondent (*Mr. Stanley C. Van Ness,* Public Defender, attorney).

The opinion of the court was delivered by

Milmed, J. S. C., Temporarily Assigned.   In his complaint in lieu of prerogative writs, also designated as "Petition For Writ Of Habeas Corpus," filed in the Law Division, plaintiff claimed that his constitutional right to a prompt parole revocation hearing had been violated by defendant State Parole Board.  On behalf of defendants the Attorney General moved to dismiss the complaint, contending that the Law Division lacked jurisdiction over the subject matter since plaintiff was seeking to collaterally challenge state ad-

ministrative agency action. The motion was denied, the trial judge finding that the Law Division does have jurisdiction pursuant to *R.* 4:3–1(a)(1) and that the alleged inaction of the Parole Board appeared to obviate the need for the matter to be considered by the Appellate Division pursuant to *R.* 2:2–3(a)(2). We granted defendants' motion for leave to appeal from the denial, at the same time directing the Attorney General to move for the consolidation for argument of all appeals pending in this court involving the same issue.[1]

On June 1, 1961 plaintiff was sentenced to serve concurrent terms of 30 to 35 years and 20 to 30 years on his convictions for kidnapping and rape. He was paroled from the State Prison on September 19, 1972. On August 30, 1973, while under parole supervision, he was arrested in Essex County on charges of armed robbery and entry with intent to steal. On September 4, 1973, while in custody in the Essex County Jail, he was served with a warrant as a parole violator, *N. J. S. A.* 30:4–123.22. A probable cause hearing was held on September 11, 1973. Sufficient cause was found to detain him pending a final revocation hearing. Following his conviction in the Essex County Court of robbery, possession of a weapon and entering with intent to steal, he was, on March 14, 1974, sentenced to new terms totalling not less than 3 nor more than 5 years (3 to 5, 2 to 3 concurrent, and 2 to 3 concurrent). He was returned to State Prison and a final parole revocation hearing was held there, under his protest, on March 28, 1974, at which time. his parole was revoked.[2]

---

[1]Three additional appeals were so consolidated. Argument was heard on November 25, 1974. Each appeal is disposed of by separate opinion filed today. The other appeals are: *James C. Johnson v. New Jersey State Parole Board et als.* (A–2985–73) ; *Norwood L. White v. U. Samuel Vukcevich, etc., et al.* (A–727–73) ; and *State of New Jersey, New Jersey State Parole Board v. Ernest McNair* (A–2249–73), 131 *N. J. Super.* 522.

[2]The Parole Board found that plaintiff had violated a condition of his parole, namely, that he "failed to refrain from conduct while on

He received notice of the decision on April 10, 1974. He has not filed a notice of appeal from that decision. On April 1, 1974 he filed his complaint in lieu of prerogative writs (petition for writ of *habeas corpus*) seeking restoration of parole.

The exclusive method for review of an action or inaction of the State Parole Board is by direct appeal to the Appellate Division. The Board is a state administrative agency established within the Department of Institutions and Agencies, a principal department in the executive branch of the State Government. *Cf. N. J. S. A.* 52:14B–2(a). As such its final decisions and actions (or inaction) are reviewable as of right by appeal to the Appellate Division, *R.* 2:2–3(a)(2), under our special constitutional structure (*N. J. Const.,* Art. VI, § V, par. 4 (1947)). *Beckworth v. N. J. State Parole Bd.,* 62 *N. J.* 348 (1973); *Monks v. N. J. State Parole Board,* 58 *N. J.* 238, 242 (1971); *Puchalski v. N. J. State Parole Board,* 104 *N. J. Super.* 294 (App. Div. 1969), aff'd 55 *N. J.* 113 (1969), *cert.* den. 398 *U. S.* 938, 90 *S. Ct.* 1841, 26 *L. Ed.* 2d 270 (1970); *In re Senior Appeals Examiners,* 60 *N. J.* 356, 363 (1972); *Central R. R. Co. v. Neeld,* 26 *N. J.* 172, 184–185 (1958), *cert.* den. 357 *U. S.* 928, 78 *S. Ct.* 1373, 2 *L. Ed.* 2d 1371 (1958); *State v. Dalonges,* 128 *N. J. Super.* 140, 145 (App. Div. 1974); *Princeton First Aid & Rescue Squad, Inc. v. Division on Civil Rights,* 124 *N. J. Super.* 150 (App. Div. 1973), *certif.* den. 63 *N. J.* 555 (1973); *Mathews v. Finley,* 46 *N. J. Super.* 175, 177 (App. Div. 1957), *certif.* den. 25 *N. J.* 283 (1957); *In re Adinolfi,* 43 *N. J. Super.* 262 (Law Div. 1957); *In re Mahoney,* 17 *N. J. Super.* 99, 108 (Cty. Ct. 1951).

In *Central R. R. Co. v. Neeld, supra,* referring to the objective of the 1948 court rules implementing the consti-

parole which shall give reasonable cause to believe that you have resumed, or are about to resume, criminal conduct or associations as evidenced by your conviction for the offenses of Robbery, Possession of a Weapon, and Entering with Intent to Steal for which you were sentenced on March 14, 1974."

tutional requirement for review, hearing and relief in the Superior Court, in lieu of the superseded prerogative writs (*N. J. Const.*, Art. VI, § V, par. 4 (1947)), Justice Jacobs pointed out that

> In 1948 this court adopted its implementing rules which sought to avoid the problems of the prerogative writ practice and to provide simple and expeditious modes of judicial review from administrative action and inaction. The rules perpetuated none of the former procedural distinctions resting on the nature of the relief sought and their wholesome design was clear; they contemplated that every proceeding to review the action or inaction of a *local* administrative agency would be by complaint in the Law Division * * * and that every proceeding to review the action or inaction of a *state* administrative agency would be by appeal to the Appellate Division. * * * [26 *N. J.* at 184–185]

More recently, in *Monks v. N. J. State Parole Board, supra,* Justice Jacobs commented:

> * * * When our 1947 Constitution was prepared, pains were taken to insure not only that the court's prerogative writ jurisdiction would remain intact, but also that the manner of its exercise would be greatly simplified (art. VI, sec. 5, para. 4). See *Ward v. Keenan,* 3 *N. J.* 298, 303–308 (1949). The implementing court rules now provide an easy mode of review designed to insure procedural fairness in the administrative process and to curb administrative abuses. * * * [58 *N. J.* at 248–249]

The "easy mode of review" of actions or inactions of state administrative agencies, including the State Parole Board, "designed to insure procedural fairness in the administrative process and to curb administrative abuses," is that set forth in *R.* 2:2–3(a)(2), *i. e.,* direct appeal to the Appellate Division. Referring to former *R. R.* 4:88–8 (appeals from administrative agencies), Judge Clapp, in his opinion for the Appellate Division in *Mathews v. Finley, supra,* noted:

> It should be observed, in passing (though it is not a matter of any consequence now, *R. R.* 1:27D(b)), that the Law Division had no authority in the premises. To review the action or, plaintiff claims, inaction of the state officials or agencies involved, he should have taken an appeal therefrom directly to the Appellate Division under

*R. R.* 4:88–8. The term "action," found in the rule, includes inaction. *Over such matters the Appellate Division has exclusive cognizance.* [46 *N. J. Super.* at 177; emphasis added]

The writ of *habeas corpus ad subjiciendum,* applied for by plaintiff, is a common law writ, a high prerogative writ, confirmed and regulated by statute. *In re Thompson,* 85 *N. J. Eq.* 221, 233 (Ch. 1915) ; *In re Davis,* 107 *N. J. Eq.* 160, 164–165 *(Ch.* 1930) ; *In re Van Winkle,* 3 *N. J.* 348, 355–356 (1950) ; *State v. La Battaglia,* 30 *N. J. Super.* 1, 3 (App. Div. 1954) ; *N. J. S. A.* 2A:67–1 *et seq.; 39 Am. Jur.* 2d, *Habeas Corpus,* §§ 1, 8, 9. It is preserved *eo nomine* in our State Constitution of 1947 (Art. I, par. 14), and is of necessity summary in nature, designed to ascertain whether the petitioner "is restrained of his liberty by due process of law." 39 *Am. Jur.* 2d, *Habeas Corpus,* §§ 1, 9 ; *N. J. S. A.* 2A:67–3. It is "a writ of right when cause appears for its issuance, but cause must always be shown." *In re Thompson, supra,* 85 *N. J. Eq.* at 249. See also, 3 *Blackstone, Commentaries* 132 *(Lewis ed.,* 1922, at 1129–1130).

All *habeas corpus* applications and actions, other than those relating to custody of infants, are brought in the Law Division, *R.* 4:3–1(a)(1). The writ "will not ordinarily issue when other adequate relief to correct error is available to the applicant." *In re Kershner,* 9 *N. J.* 471, 476 (1952), *cert.* den. 344 U. S. 844, 73 S. Ct. 59, 97 L. Ed. 656 (1952). It "is not designed as a substitute for routine and completely adequate rules of practice. Nor is it designed to serve the office of an appeal." *In re Robilotto,* 24 *N. J. Super.* 209, 211–212 (App. Div. 1953). It "may not be used in lieu of appeal," and the "fact that the time for appeal has expired is of no moment." *In re Zee,* 13 *N. J. Super.* 312, 317 (Cty. Ct. 1951), aff'd *sub nom. State v. Zee,* 16 *N. J. Super.* 171 (App. Div. 1951), *cert.* den. 343 *U. S.* 931, 72 *S. Ct.* 766, 96 *L. Ed.* 1340 (1952). See also, *In re Davis, supra,* 107 *N. J. Eq.* at 170. For Johnson there was another adequate remedy available — direct appeal to the

Appellate Division from the action or inaction of the state administrative agency (Parole Board) in the parole revocation proceedings. *R.* 2:2–3(a)(2).

Beyond this, "the function of *habeas corpus* is to secure the immediate release of a prisoner." *State v. Williams,* 29 *N. J. Super.* 309, 315 (App. Div. 1954), *cert.* den. 348 *U. S.* 847, 75 *S. Ct.* 71, 99 *L. Ed.* 668 (1954). An "indispensable prerequisite to the writ in its traditional application" is that the petitioner, if he prevailed, would be entitled to immediate release — a discharge from custody. *State v. Daniels,* 38 *N. J.* 242, 246, 247, n. 1 (1963), *cert.* den. 374 *U. S.* 837, 83 *S. Ct.* 1885, 10 *L. Ed.* 2d 1057 (1962); *In re Kershner, supra,* 9 *N. J.* at 476. See also, 39 *Am. Jur.* 2d, *Habeas Corpus,* § 14. In the factual setting of this case it is immediately apparent that this "indispensable prerequisite" is missing. In view of the custodial sentences on the three new convictions, plaintiff, if he prevailed, would not be entitled to immediate release.

Plaintiff pursued the wrong remedy. His claim of delay (inaction) on the part of the State Parole Board in granting him a prompt parole revocation hearing was reviewable exclusively by direct appeal to this court. His failure to so proceed is of course of no consequence at this stage of the proceedings, *R.* 1:13–4(b), and we, accordingly, proceed to review the matter as if brought before us by appeal under *R.* 2:2–3(a)(2). We note in passing that the court rules governing appellate practice amply provide for acceleration of the time schedule on appeals "on the court's own motion or on the motion of a party, which may be made ex parte," *R.* 2:9–2, and for temporary relief both in administrative proceedings, *R.* 2:9–7, and in emergent matters, *R.* 2:9–8. The needs of justice are amply served by these orderly procedures.

Plaintiff's parole was properly revoked in accord with the objectives set out in *Morrissey v. Brewer,* 408 *U. S.* 471, 92 S. Ct. 2593, 33 *L. Ed.* 2d 484 (1972), during the transitional period between pre-*Morrissey* and post-*Mor-*

*rissey* parole revocation proceedings.[3] The required preliminary (probable cause) hearing was "promptly" held on September 11, 1973, one week after he was served with a warrant as a parole violator. In regard to this preliminary hearing no claim is made that the requirements of *Morrissey* were not fulfilled. Plaintiff was not in any way prejudiced by having the final revocation hearing held within a short time (14 days) after rather than before he was sentenced on the three new convictions. If he had been acquitted rather than convicted of the three new charges, the basis for revocation would have been substantially impaired. See *State v. Van Dorn,* 43 *N. J. Super.* 406, 412–413 (App. Div. 1957).

In *Morrissey* both Chief Justice Burger, in his opinion for the court, and Justice Douglas, in his dissent (in part), clearly distinguish between revocations for conviction of another crime and revocations for other violations of conditions of parole. In regard to the revocation hearing Chief Justice Burger pointed out, among other things, that

> * * * The parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation. * * * [408 *U. S.* at 488, 92 S. Ct. at 2603]

and

> * * * Obviously a parolee cannot relitigate issues determined against him in other forums, as in the situation presented when the

---

[3]This transitional period has now been over for some time. We expect close compliance with both the letter and spirit of the process that is due under *Morrissey* in parole revocation proceedings. Probable cause for detention having been found, any required revocation hearing — stage two of the proceedings — must accordingly be tendered to the parolee by the Parole Board within a reasonable time, in our view not more than 60 days (barring unusual circumstances), after the parolee is taken into custody as a delinquent on parole. *Cf. N. J. S. A.* 30:4-123.22; *Morrissey v. Brewer, supra,* 408 *U. S.* at 488, 92 *S. Ct.* at 2604, 33 *L. Ed.* 2d at 498; and see, Note, "The Supreme Court, 1971 Term," 86 *Harv. L. Rev.* 1, 97–99 (1972).

revocation is based on conviction of another crime. [408 *U. S.* at 490, 92 S. Ct. at 2605]

And Justice Douglas, in his dissent in part, notes in his reference to "the due process requirements of parole revocation" that

We except of course the commission of another offense which from the initial step to the end is governed by the normal rules of criminal procedure. [408 *U. S.* at 499, n. 12, 92 S. Ct. at 2610]

In the circumstances of this case, no remand to the Parole Board for further hearing is required. "To now require a remand for an evidentiary hearing would be an exercise in futility." *State v. Morales,* 120 *N. J. Super.* 197, 202 (App. Div. 1972), *certif.* den. 62 *N. J.* 77. (1972).

In light of the foregoing, the motion to dismiss the complaint (petition for writ of *habeas corpus*) should have been granted. The order denying that motion is reversed; plaintiff's complaint is dismissed; and the action of the State Parole Board revoking plaintiff's parole is affirmed.