764 A.2d 494 (2001)
336 N.J. Super. 253
In the Matter of the FAILURE BY THE DEPARTMENT OF BANKING AND INSURANCE TO TRANSMIT A PROPOSED DENTAL FEE SCHEDULE TO THE OAL for Publication in the New Jersey Register.
Superior Court of New Jersey, Appellate Division.
Argued December 11, 2000.
Decided January 17, 2001.
*495 Arthur Meisel, North Brunswick, argued the cause for appellants New Jersey Dental Association and Harris N. Colton, D.D.S.
Doreen J. Piligian, Deputy Attorney General, argued the cause for respondent New Jersey Department of Banking and Insurance (John J. Farmer, Jr., Attorney General, attorney; Nancy Kaplen, Assistant Attorney General, of counsel; Karyn G. Gordon, Deputy Attorney General, on the brief).
Before Judges WEFING, CUFF and LEFELT.
The opinion of the court was delivered by LEFELT, J.A.D.
This appeal concerns delay by the Department of Banking and Insurance ("Department") in revising a dental fee schedule, set forth in N.J.A.C. 11:3-29.6(b), to reflect inflation. The fee schedule was last revised in 1996 and, according to the New Jersey Dental Association ("NJDA"), must be adjusted mandatorily, under N.J.S.A. 39:6A-4.6a, every two years to reflect inflation. Hoping to force the Department to update the fee schedule, NJDA filed this appeal from the Department's inaction. NJDA claims it is entitled to a judgment declaring that the Department shall "forthwith" adjust the fee schedule upward for inflation; apply the new rates retroactively to June 30, 1999; and readjust the fee schedule every two years, with the next adjustment scheduled for June 30, *496 2001. We decline to issue the judgment NJDA seeks and dismiss the appeal, but express dismay with the Department's progress in complying with the legislative mandate.

I.
The Legislature first enacted N.J.S.A. 39:6A-4.6 in 1988 as a cost containment measure. P.L. 1988, c. 119, § 10. The statute required the Department to promulgate medical fee schedules on a regional basis for the purpose of paying health care providers, including dentists, for services rendered where personal insurance protection ("PIP") automobile insurance was involved.
In 1990, the Fair Automobile Insurance Reform Act of 1990 ("Fair Act"), P.L. 1990, c. 8, was enacted to revise the State's motor vehicle insurance laws to achieve economy and lower insurance costs. P.L. 1990, c. 8, § 2(d). Through the Fair Act, the Legislature amended N.J.S.A. 39:6A-4.6 to require, among other things, that reimbursement rates established within the fee schedule "incorporate the reasonable and prevailing fees of 75% of the practitioners within the region," and that the fee schedule be reviewed biannually (every six months). P.L. 1990, c. 8, § 7. The Fair Act also prohibited health care providers, including doctors and dentists, from demanding or requesting any payment in excess of those permitted in the fee schedule. Ibid. Thus, the fee schedule established maximum reimbursable fees for services rendered to individuals receiving treatment or goods under PIP coverage.
On November 26, 1990, in response to the Fair Act, the Department adopted a medical fee schedule for dental services on an emergency basis, 22 N.J.R. 3809(a), and published the fee schedule at N.J.A.C. 11:3-29.6(b). In the six following years, the dental fee schedule was amended once on August 19, 1996. 28 N.J.R. 3962(a).
The 1996 revision increased the upper limit dollar amounts of the fee schedule to account for inflationary trends, by approximately twenty-three to thirty-percent over the 1990 schedule. According to the Department, the amended 1996 dollar amounts were based on proprietary data consisting of billed fees, obtained by the Department from the Health Insurance Association of America.
In 1997, the Legislature again amended N.J.S.A. 39:6A-4.6 by authorizing the Department to "contract with a proprietary purveyor of fee schedules for the maintenance of the fee schedule, which shall be adjusted biennially [every two years] for inflation and for the addition of new medical procedures." P.L. 1997, c. 151, § 33. When no action was taken concerning the dental fee schedule after this amendment, on March 11, 1998, NJDA filed a Notice of Petition for Rulemaking, N.J.A.C. 1:30-3.6, requesting an increase in the dental fee schedules. 30 N.J.R. 1438(a). The petition indicated that because the last revision of the schedule occurred on August 19, 1996, to comply with the 1997 amendment, the fee schedule should be revised as of August 19, 1998.
On May 18, 1998, the Department responded to the petition by indicating that "No exact deadline is imposed on the Commissioner by the amended statute and the initial two-year compliance period may be reasonably interpreted to run from [June 30, 1997] the effective date of the new requirement" rather than from August 19, 1996, the date of the last adjustment. 30 N.J.R. 1866(a).
Meanwhile, one day after the Department responded to the petitioner's rulemaking petition, on May 19, 1998, the Governor signed the Automobile Insurance Cost Reduction Act ("AICRA") into law. P.L. 1998, c. 21 and c. 22. AICRA authorized the Department to adopt regulations defining, with precision, standard treatment protocols and diagnostic tests and services that will be reimbursed under the PIP component of automobile insurance *497 policies. These regulations, N.J.A.C. 11:3-4, were adopted in December 1998 and made effective on March 22, 1999. AICRA intended to reduce costs to the insurance system by reducing unnecessary insurance company expenses.
On May 15, 1998, almost one year after the effective date of the 1997 amendment to N.J.S.A. 39:6A-4.6, four days before AICRA was signed into law, and a few days before the Department responded to petitioner's rulemaking petition, the Department issued a Request for Proposal, soliciting bids from contractors to assist in revising and adjusting the medical fee schedule regulations. Medicode, Inc., a proprietary purveyor of fee schedules, submitted a bid proposal to the Department on July 6, 1998. Medicode proposed to revise the existing fee schedules and create new fee schedules in approximately four months.
On October 20, 1998, the Department accepted Medicode's proposal and entered into a contract with the corporation. The Department claims to be working diligently with Medicode, now called Ingenix, to prepare a proposal for the New Jersey Register revising the dental fee schedule.
Meanwhile, one day before the Department's Request for Proposal seeking professional help to revise the fee schedules, on May 14, 1998, NJDA filed a notice of appeal in the Appellate Division. This appeal pursued NJDA's position that the Department must revise the dental fee schedule two years from the last revision, August 19, 1996. After efforts to accelerate its appeal failed, however, NJDA withdrew the appeal on August 17, 1998.
With no dental fee schedule revision yet in sight, on March 5, 1999, NJDA wrote to inquire "when the Department expects to transmit to the Office of Administrative Law a proposed revision to the Dental Fee Schedule for publication in the New Jersey Register." The Department responded on April 13, 1999 that it was "not yet in position to transmit a proposal," but expressed hope that "this will be accomplished within the next month or so." When, once again the Department missed its announced deadline, petitioners filed its second notice of appeal in the Appellate Division on May 28, 1999.
While this latest appeal was pending, in March 2000, the Department prepared a discussion draft of the dental fee schedule and solicited views from various interested parties, including NJDA. Concern was voiced over the fact that the schedule assumed that the percentage difference between billed and paid fees was the same for dentists as it was for other medical providers. After considering the various comments, the Department decided not to propose the draft schedule, but instead decided to propose repeal of the existing dental fee schedule.[*]
The Department's rule proposal repealing the existing dental fee schedule and reserving space for a future dental fee schedule was published by the Office of Administrative Law in the December 18, 2000 New Jersey Register. 32 N.J.R. 4332(a). The proposal provides that
[t]he Department has determined that it does not have sufficient data on paid dental fees to develop a fee schedule at this time. The current dental fee schedule is being proposed for repeal. The Department will work with dental trade organizations and others to compile a fee schedule that accurately reflects market-based billed and paid dental fees.

[32 N.J.R. 4333.]
Also, under the proposed new rule, the Department defined a provider's eligible charge or expense to mean "the provider's usual, customary and reasonable charge or the upper limit in the fee schedule, whichever is lower." N.J.A.C. 11:3-29.2, proposed at 32 N.J.R. 4335.
*498 By taking this action, the Department contends that it will have time to gather data to ascertain the amounts paid for dental services rather than the amounts actually billed for dental services in New Jersey so that a proper fee schedule can be developed. The Department further asserts that its definition of eligible charge or expense will permit dentists to charge reasonable amounts for their services that presumably will reflect the forces of inflation.
Despite this latest development, NJDA takes the position that "[b]y proposing to repeal the existing dental fee schedule, the Department is not thereby freed from the continuing duty, imposed by a positive legislative command, to adjust biennially for inflation a duly adopted fee schedule while it continues to exist." Because the Department has only proposed a rule amendment, and we do not know, at this time, whether the Department will adopt the proposed repeal of the dental fee schedule and the definition of eligible charge or expense, we go further in evaluating NJDA's position.

II.
From the last revision of the fee schedules in 1996 until the present, the Department claims it has been evaluating AICRA's legislative reforms as well as changes to the health insurance market and reviewing a wholesale revision to the regulations governing all medical fee schedules, including the dental fee schedule. The Department asserts that once the new baseline rates are determined for dentists, the rates will incorporate the effects of inflation and be consistent with the "reasonable and prevailing fees of 75% of the practitioners within the region." N.J.S.A. 39:6A-4.6a. The Department has completed and proposed in the December 18, 2000 Register new fee schedules for physicians, 32 N.J.R. 4337-4357; home care services, 32 N.J.R. 4357; ambulatory services, 32 N.J.R. 4357; and durable medical equipment and prosthetic devices, 32 N.J.R. 4358-4377. The Department contends, however, that the dental fee schedule needs further development.
NJDA is frustrated by this lengthy delay where, according to NJDA, the Department blithely ignores the legislative mandate to biennially adjust the dental fee schedule. Thus, NJDA seeks relief by way of mandamus directing the Department to immediately revise the schedule and commence its biennial updates.
"The exclusive method for review of action or inaction of a State administrative agency ... is by direct appeal to us, pursuant to R. 2:2-3(a)(2)." Trantino v. New Jersey State Parole Bd., 296 N.J.Super. 437, 459-60, 687 A.2d 274 (App.Div. 1997), aff'd and modified, 154 N.J. 19, 711 A.2d 260 (1998). The term "action" in R. 2:2-3(a)(2) and R. 2:2-4 "includes inaction." Mathews v. Finley, 46 N.J.Super. 175, 177, 134 A.2d 441 (App.Div.), certif. denied sub nom. Mathews v. Neeld, 25 N.J. 283, 135 A.2d 590 (1957). Thus, NJDA correctly brought its dispute directly to us. Pascucci v. Vagott, 71 N.J. 40, 52, 362 A.2d 566 (1976); see also Johnson v. New Jersey State Parole Bd., 131 N.J.Super. 513, 517-21, 330 A.2d 616 (App. Div.1974), certif. denied, 67 N.J. 94, 335 A.2d 47 (1975). Moreover, NJDA followed the correct procedure by filing a notice of appeal and motion for summary disposition. Hospital Center at Orange v. Guhl, 331 N.J.Super. 322, 330, 751 A.2d 1077 (App.Div.2000).
Nevertheless, we note that the Department appears to be in the midst of attempting to revise the dental fee schedule. Given this case's posture, the relief sought by NJDA is nettlesome because of separation of powers concerns. N.J. Const. art. III, § 1, ¶ 1. We must be careful not to intrude upon the agency's prerogatives. Gilbert v. Gladden, 87 N.J. 275, 281, 432 A.2d 1351 (1981). This situation makes mandamus especially problematic for NJDA.
*499 Mandamus is inherently coercive. Mandamus is usually appropriate only where the right to performance of a ministerial duty is clear and certain. Vacca v. Stika, 21 N.J. 471, 476, 122 A.2d 619 (1956). An official duty is ministerial "when it is absolutely certain and imperative, involving merely the execution of a set task, and when the law which imposes it prescribes and defines the time, mode and occasion of its performance with such certainty that nothing remains for judgment or discretion." Case v. Daniel C. MaGuire, Inc., 53 N.J.Super. 494, 498, 147 A.2d 824 (Ch.Div.1959). While the directive usually commands the performance of a specific act or obligation, mandamus may also compel "the exercise of a discretionary function." Switz v. Township of Middletown, 23 N.J. 580, 587, 130 A.2d 15 (1957). However, mandamus may not issue to "control the exercise of discretion." Id. at 587-88, 130 A.2d 15.
We cannot micromanage any administrative agency. How an agency chooses to implement legislation is the agency's primary responsibility, not the court's. We give agencies wide discretion in deciding how best to approach legislatively assigned administrative tasks, Dougherty v. Dep't of Human Services, 91 N.J. 1, 6, 449 A.2d 1235 (1982); Texter v. Dep't of Human Services, 88 N.J. 376, 383, 443 A.2d 178 (1982), especially when the task falls within a particular agency's expertise, as does the task in question. See Public Interest Research Group v. State, 152 N.J.Super. 191, 203, 377 A.2d 915 (App.Div.), certif. denied, 75 N.J. 538, 384 A.2d 517 (1977).
Obviously, deciding how best to approach and accomplish the dental fee schedule revision constitutes an exercise of discretion and is not ministerial. Had the agency not done any work toward revising the schedule, we could issue mandamus compelling the Department to begin its work, Switz, supra, 23 N.J. at 587, 130 A.2d 15, but any directive, issued at this time, requiring that the Department complete the task or even directing completion by a specific time has the potential of interfering with the orderly workings of the Department. Nevertheless, NJDA contends that it is merely seeking an order compelling the Department to do what the Legislature has already required.

III.
Our review of agency determinations is quite limited. We can overturn only those administrative determinations that are arbitrary, capricious, unreasonable, or violative of expressed or implicit legislative policies. Campbell v. Department of Civil Serv., 39 N.J. 556, 562, 189 A.2d 712 (1963). In this case, NJDA claims the Department's inaction is violative of N.J.S.A. 39:6A-4.6a.
The statute in issue, in pertinent part, reads as follows:
The Commissioner of Banking and Insurance shall ... promulgate medical fee schedules on a regional basis for the reimbursement of health care providers providing services or equipment for medical expense benefits for which payment is to be made by an automobile insurer under personal injury protection coverage ... or by an insurer under medical expense benefits coverage.... These fee schedules shall be promulgated on the basis of the type of service provided, and shall incorporate the reasonable and prevailing fees of 75% of the practitioners within the region.... The commissioner may contract with a proprietary purveyor of fee schedules for the maintenance of the fee schedule, which shall be adjusted biennially for inflation and for the addition of new medical procedures.

[N.J.S.A. 39:6A-4.6a.]
NJDA claims the Legislature could not have been clearer when it directed that the fee schedules "shall be adjusted biennially for inflation." Ibid. NJDA also contends that before opposing its motion for summary disposition, the Department repeatedly *500 acknowledged that it had an obligation to adjust the fee schedules every two years for inflation. Moreover, NJDA points out that before amending the statute to require biennial revision, the statute required that the schedules "shall be reviewed biannually [every six months]." Thus, by amending the statute to require biennial inflation adjustment, NJDA argues that the Legislature intended to change the law.
We agree that the plain language of the particular provision cited by NJDA makes it relatively clear that the Department should adjust the fee schedules for inflation every two years. Bergen Commercial Bank v. Sisler, 157 N.J. 188, 202, 723 A.2d 944 (1999) (when interpreting a statute, a court must first look at the wording of the statute to ascertain its plain meaning and intent); Camden County Board of Chosen Freeholders v. Keating, 193 N.J.Super. 100, 109, 472 A.2d 178 (Law Div.), aff'd, 193 N.J.Super. 111, 472 A.2d 184 (App.Div.1983). "Our duty is to apply the legislative intent as expressed in the statute's language." Alston v. City of Camden, 332 N.J.Super. 240, 246, 753 A.2d 171 (App.Div.), certif. granted, 165 N.J. 607, 762 A.2d 221 (2000).
Indeed, both parties actually agree with the construction of the limited portion of the statute cited by NJDA. We interpret the Department's argument that "shall" can be construed as "may" to permit the Department to recognize that inflationary or deflationary forces during a two-year period might render unnecessary a particular adjustment. As so limited, we have no problem with that interpretation. Thus, we read the parties' submissions as essentially agreeing that the Legislature intended all medical fee schedules, including the dental fee schedule, to be revised for inflation every two years when necessary to maintain the stated amounts at the seventy-fifth percentile.
Though the parties agree that periodic revisions under the statute in question must be undertaken, they sharply disagree over when the Department must begin the revision. Because the Department revised the schedule only once, in 1996, NJDA believes that the Department was obligated to adjust the schedule for inflation every two years after 1996. The Department argues that the biennial revision schedule does not begin until the Department issues the revised schedule being developed with Ingenix's assistance.
The 1997 amendment to N.J.S.A. 39:6A-4.6, requiring biennial revision, contains no specific directive explaining when the first inflation adjustment must be begun or completed. "When the Legislature has concluded that an agency should be required to take action within a fixed time period, it has incorporated a specific provision in the applicable legislation establishing a deadline for agency action." Hospital Center at Orange, supra, 331 N.J.Super. at 335, 751 A.2d 1077 (citing as examples, N.J.S.A. 52:14B-10(c) and N.J.S.A. 40:55D-73). In the absence of any deadline, we conclude that it would be inappropriate in this matter to impose such a deadline by judicial fiat.
Moreover, the 1997 amendment to N.J.S.A. 39:6A-4.6, provided that the Department "may contract with a proprietary purveyor of fee schedules for the maintenance of the fee schedule." The Legislature also mandated that the schedules "shall be promulgated on the basis of the type of service provided, and shall incorporate the reasonable and prevailing fees of 75% of the practitioners within the region." Thus, the Legislature understood that some work would have to be undertaken to develop and maintain the fee schedules and for that purpose it permitted the Department to engage a "proprietary purveyor."
NJDA contends that in the 1996 revision the Department had already established baseline rates that incorporate the reasonable and prevailing fees of seventy-five percent of practitioners within a region, and, therefore, only an inflationary adjustment *501 is now required. However, the Department has indicated, in a valid exercise of discretion, that it had previously relied on "billed fee data" and would prefer to base its revised schedule on the more accurate market, or "paid fees."
We normally give "substantial deference to the interpretation of the agency charged with enforcing an act." New Jersey Tpk. Auth. v. American Fed. of State, County and Mun. Employees, Council 73, 150 N.J. 331, 696 A.2d 585 (1997) (quoting Merin v. Maglaki, 126 N.J. 430, 436-37, 599 A.2d 1256 (1992)). In this case, we acknowledge that the Department's interpretation of the statute has seemingly changed over the years. At first, the agency took the position that it had two years from the amendment's effective date, June 30, 1997, to revise the dental fee schedule. Now, the Department argues that it can wait until after it promulgates the new schedule to determine whether any further adjustments are necessary. Nevertheless, we will overturn an agency's interpretation of a statute it implements, only when "plainly unreasonable," Merin v. Maglaki, supra, 126 N.J. at 437, 599 A.2d 1256, and we do not view the Department's current interpretation as unreasonable.
Moreover, both the Fair Act, which established the biennial revision requirement, and AICRA have cost containment purposes. When statutes relate to the same or similar subject matter, "we make every effort to ... attempt to interpret them harmoniously." Oches v. Township of Middletown Police Dep't., 155 N.J. 1, 5, 713 A.2d 993 (1998) (citing Laboda v. Township of Clark, 40 N.J. 424, 435, 193 A.2d 97 (1963)).
The Department cannot ignore the Legislature's principal objective of establishing a maximum rate for fee reimbursement under automobile insurance polices to contain medical expense costs. Cobo v. Market Transition Facility, 293 N.J.Super. 374, 385, 680 A.2d 1103 (App.Div.1996) (quoting 23 N.J.R. 537-38 (Feb. 19, 1991)), see also N.J.S.A. 39:6A-4.6c. In addition, AICRA, which was enacted while the Department was working on complying with N.J.S.A. 39:6A-4.6a, "established typical courses of treatment for certain common automobile-related injuries." New Jersey Coalition of Health Care Prof'ls, Inc. v. New Jersey Dep't of Banking and Ins., 323 N.J.Super. 207, 224, 732 A.2d 1063 (App.Div.), certif. denied, 162 N.J. 485, 744 A.2d 1208 (1999). The implementing regulations established "guidelines against which to measure and identify unnecessary or inappropriate treatment." Ibid. Thus, AICRA resulted in the promulgation of regulations setting out standard treatment procedures for which health care providers, including dentists, would be reimbursed under N.J.A.C. 11:3-29.6. Id. at 274-85, 732 A.2d 1063.
Any fee schedule that the Department adopts after AICRA, pursuant to N.J.S.A. 39:6A-4.6a, must of necessity consider and conform with AICRA's legislative intent, and we cannot conceive of the Legislature wishing the Department to adjust the existing schedule for inflation, without considering the cost saving goals of AICRA. Should medical fees, including dental fees, be established at too high a level or for unnecessary procedures, the fundamental goal of AICRA could be impaired.
The amendment to N.J.S.A. 39:6A-4.6, when read together with AICRA, gives the Department discretion to use its expertise to contract with a fee schedule purveyor and to calculate and adjust the fee schedule in accordance with AICRA's overall cost containment policies. We conclude that biennial adjustment need not begin until the Department issues a new dental fee schedule that coordinates the fees that can be charged with the legislative policy behind AICRA, requiring, among other reforms, standard treatment procedures to maintain costs.

IV.
When the new schedule is finally issued, NJDA contends that it should be *502 retroactive to June 30, 1999, two years after the effective date of N.J.S.A. 39:6A-4.6a. As a general principle, statutes and regulations are usually applied prospectively. Seashore Ambulatory Surgery Ctr. v. Dept. of Health, 288 N.J.Super. 87, 97, 671 A.2d 1088 (App.Div.1996). Regulations may be retroactively applied where "the Legislature has expressed its intent, either explicitly or implicitly," that they should be so applied, "when the reasonable expectations of those affected by the [regulations] warrant such application," or when the regulation is ameliorative or curative. Twiss v. State, Dept. of Treasury, 124 N.J. 461, 467, 591 A.2d 913 (1991); see also Frank A. Greek & Sons, Inc. v. Township of South Brunswick, 257 N.J.Super. 94, 106, 607 A.2d 1359 (App.Div.), certif. denied, 130 N.J. 602, 617 A.2d 1223 (1992), cert. denied, 507 U.S. 1031, 113 S.Ct. 1848, 123 L.Ed.2d 472 (1993) (citing Gibbons v. Gibbons, 86 N.J. 515, 522, 432 A.2d 80 (1981)). Moreover, a regulation may only be applied retroactively if such application will not result in "`manifest injustice' to a party adversely affected." Gibbons, supra, 86 N.J. at 523, 432 A.2d 80; Grippo v. Schrenell & Co., 223 N.J.Super. 154, 162, 538 A.2d 404 (App.Div.1988).
Neither N.J.S.A. 39:6A-4.6a nor AICRA provides for retroactive application of the fee schedule, and the prime test for determining whether a regulation should be applied retroactively is the intent of the Legislature. Dep't of Envtl. Protection v. Ventron Corp., 94 N.J. 473, 498, 468 A.2d 150 (1983). Most significantly, the schedule also affects numerous insurance companies that are not parties to this appeal, and whether retroactivity is appropriate cannot be determined until the new schedule is developed. Because the record is insufficient to determine this issue, we decline to do so. Accordingly, we leave this question, initially, to the discretion of the Department.

V.
Thus, we will not issue mandamus to compel the Department to complete the fee schedule "forthwith." We conclude that the biennial revision may begin after the new dental fee schedule is issued. And, we decline to determine whether the new fee schedule must be retroactive.
We cannot conclude this opinion, however, without indicating that we are distressed by the Department's apparent lack of progress in revising the dental fee schedule. Our Supreme Court has held that undue delay in administrative proceedings may result in a denial of "fundamental procedural fairness." In re Arndt, 67 N.J. 432, 436, 341 A.2d 596 (1975); Johnson v. New Jersey State Parole Bd., 131 N.J.Super. 513, 517-18, 330 A.2d 616 (App.Div.1974), certif. denied, 67 N.J. 94, 335 A.2d 47 (1975).
The progress of the Department in completing this task has been marked by much unexplained delay. We note, for example, that N.J.S.A. 39:6A-4.6 was amended in 1997 and the Department took almost one year before requesting proposals from fee schedule purveyors. Ingenix's original proposal contemplated completion within months. Instead, from the date the Department accepted Ingenix's proposal, to today, over two years have transpired. In response to a March 5, 1999 inquiry from NJDA, the Department wrote on April 13, 1999 to express its hope that a revision of the fee schedule would be "accomplished within the next month or so." That was over twenty months ago. What is particularly distressing is that in the Department's proposal to repeal the existing dental fee schedule, the Department admitted it still did not have sufficient data to complete the task, though years have gone by.
We conclude that in the absence of specific deadlines, the Legislature contemplated reasonable expedition in implementing the dictates of N.J.S.A. 39:6A-4.6a. We assume that the Department's implementation effort dealing with AICRA was quite time consuming, and we commend the Department for completing the fee *503 schedules for physicians and other providers, but so much time has transpired, that we wonder whether reasonable efforts are being undertaken to complete the dental fee schedule. In our opinion, the Department is pressing upon the limits of reasonableness, and we urge the Department to speed its efforts to complete this task.
We also suggest that the Department notify the affected parties, especially NJDA, should any further delay interfere with its announced course of action to repeal the existing schedule. Moreover, the Department should keep all affected parties informed of its progress with Ingenix in developing the new schedule after repealing the existing schedule. We further suggest that such progress not be unnecessarily interrupted and that the agency proceed with due diligence.
Finally, we take no position on whether the Department's current proposal to repeal the existing dental fee schedule is an adequate response toward implementing N.J.S.A. 39:6A-4.6a. That matter has not been properly presented to us. We do indicate that whatever action the Department takes should be undertaken with reasonable dispatch. We do not retain jurisdiction.
Appeal Dismissed.
NOTES
[*] At oral argument, we granted the Department's motion to supplement the record with additional relevant events that occurred while the appeal was pending.