88 N.J. Super. 343 (1965)
212 A.2d 384
MAURICE W. GROBER, PLAINTIFF-APPELLANT AND CROSS-RESPONDENT,
v.
HERMAN KAHN, GERTRUDE KAHN, ALICE BROOKS AND CAROL WEINTRAUB, DEFENDANTS-RESPONDENTS AND CROSS-APPELLANTS, AND CONDENSER SERVICE & ENGINEERING CO., INC., INTERVENOR-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 1, 1965.
Decided July 7, 1965.
*346 Before Judges KILKENNY, GAULKIN and LEWIS.
Mr. Israel B. Greene argued the cause for plaintiff-appellant and cross-respondent (Mr. Laurence B. Orloff, on the brief).
Mr. Adrian M. Unger argued the cause for defendants-respondents and cross-appellants and intervenor-appellant (Messrs. Milton M. & Adrian M. Unger, attorneys; Mr. Stephen A. Gilbert on the brief).
The opinion of the court was delivered by KILKENNY, J.A.D.
Plaintiff sued in the Chancery Division essentially to establish his interest in a joint venture and for an accounting of the assets of the joint venture. He also sought a partition of industrial real estate which, along with some personalty, had been acquired from Camden Forge Company in the name of defendant Herman Kahn and which *347 plaintiff claimed really belonged to the joint venture. There were other claims for incidental relief, as more particularly set forth in his amended and supplemental complaints.
The litigation was bitterly drawn out, with about 60 motions by the parties and an 84-day trial, which produced approximately 10,000 pages of testimony and some 700 exhibits.
The trial court determined that plaintiff had a 25% interest in the joint venture and defendant Kahn family owned the other 75% allocated 25% to Herman Kahn, 25% to his wife Gertrude Kahn, and 12 1/2% to each of his two daughters, Alice Brooks and Carol Weintraub. It was also decided that defendant Herman Kahn had taken title to the property of Camden Forge Company for the benefit of the joint venture, thus making him a trustee of that property and the joint venture beneficiary of the trust. Kahn was held liable to the joint venture in the sum of $432,400.60 plus interest (not compounded) to be computed at 6% only on the sum of $182,400.60, as hereinafter more particularly set forth. A setoff of $39,080.43 against plaintiff's 25% interest was allowed because of payments made by Kahn on account of income tax assessments against plaintiff and his wife. Kahn's two daughters were each held liable to the joint venture in the sum of $3,000 without interest.
The joint venture was ordered dissolved in a manner similar to the statutory dissolution of partnerships, and a receiver was appointed for the unsold real and personal property of the joint venture.
Thereafter, plaintiff moved for an award of counsel fees in the amount of $100,000, accountant's fees in the amount of $40,000, and appraisers' fees to be paid either out of the sum adjudged due from defendant Herman Kahn or to be charged against him personally. The motion was denied for the reasons expressed by the trial court in its reported opinion. Grober v. Kahn, 83 N.J. Super. 382 (Ch. Div. 1964).
Plaintiff appealed from so much of the Chancery Division judgment and incidental orders as (1) disallowed the application for counsel fees, accountant's fees and appraisers' fees; *348 (2) allowed no interest on $250,000 of the amount for which defendant Herman Kahn was held liable to the joint venture; (3) limited the interest at a straight 6%, without compounding it, on the balance of $182,400.60 adjudged by the court to be due and owing by Herman Kahn to the joint venture, and (4) stayed execution of the judgment against Kahn and the order imposing costs, conditioned upon Kahn's filing a surety company bond in the sum of $100,000. Such a bond was filed.
Defendants cross-appealed from so much of the judgment as was adverse to them, as well as from a number of rulings by the trial court at and prior to trial, alleged to be erroneous and prejudicial.
Condenser Service & Engineering Co., Inc. (hereinafter "Condenser"), a corporation wholly owned by Herman Kahn, had moved for leave to intervene as a party in the litigation, claiming ownership of the property which the trial court in its findings of February 21, 1964 considered to be among the assets of the Grober-Kahn joint venture. That motion was denied by order of the Chancery Division on March 30, 1962. Condenser did not appeal from that order until after judgment was entered, joining with defendants in their notice of appeal. It contends that the trial court erred in denying its motion for intervention.
When plaintiff failed to request and have filed a transcript of the proceedings as required by R.R. 1:2-8(e), made applicable to this court by R.R. 2:2-5, defendants moved to dismiss the appeal. We allowed the appeal to proceed without the need for Grober or Kahn to file a transcript upon their agreeing to file a written stipulation that the fact findings expressed in the trial court's written opinion would be accepted as true for the purpose of the appeal and cross-appeal, and that no argument would be made on the appeals as to evidence or testimony in the case, except that stated by the trial court in its opinion. The stipulations were filed and a transcript of the proceedings was not filed. However, Condenser has produced portions of the record to support its legal *349 position, not being bound by the stipulations of the parties to the main appeals.
We consider first the claims of error asserted by plaintiff.

I.
There was no error in the trial court's staying execution of the money judgment against Kahn and of the costs imposed against him, conditioned upon his filing a surety company bond in the amount of $100,000. "The grant or denial of a stay and the extent, terms, and conditions thereof are matters resting in the discretion of the court from which the appeal is taken, or to which certification is sought, or the appellate court, to be exercised with proper regard to the particular circumstances in each case." R.R. 1:4-6, R.R. 2:4-1. The application was properly made in the first instance to the trial court and prior to the filing of any briefs on appeal. R.R. 1:4-7, R.R. 2:4-3.
There was no abuse of discretion in fixing the amount of the bond at $100,000. Plaintiff had only a 25% interest in the joint venture. A receiver had been placed in charge of the unsold realty and personalty acquired from Camden Forge Company. Meanwhile, the receiver sold the Camden Forge Company property for $435,000 and retains the net proceeds subject to the control of the court. Thus, plaintiff's 25% share in the joint venture is amply secured by the $100,000 bond and the funds in the possession of the receiver, both of which may be reached by appropriate court order. Moreover, defendant Kahn also has a 25% interest in the joint venture  not counting the other 50% belonging to his wife and daughters  which he cannot reach until plaintiff's rights are satisfied. Thus, plaintiff is adequately secured. R.R. 1:4-8 (a), R.R. 2:4-1.

II.
The trial court acted properly in not allowing any interest on the $250,000 received by Kahn from the sales of scrap at the Camden Forge plant, which moneys Kahn deposited *350 in Condenser's account with the knowledge and acquiescence of plaintiff, who was the president of Condenser. Though the proceeds of these sales belonged to the joint venture, as the trial court found, rather than to Kahn personally or his corporation, Condenser, their deposit by Kahn for use by Condenser to pay some pressing tax obligations merely created a debt due from Kahn to the joint venture. Plaintiff's official position in Condenser made him fully aware of Condenser's needs and the application of these money's to satisfy those needs. No objection was made by plaintiff or any member of the joint venture to use of this sum. On the contrary, there was obvious acquiescence therein.
Since the $250,000 was held to belong to the joint venture, its use by Kahn with the acquiescence of the joint venturers was in the nature of a loan from the joint venture to Kahn. There was no agreement or understanding between the parties that Kahn would be required to pay any interest on this sum of money. A loan of money, without any provision for the payment of interest, does not ordinarily carry with it any obligation to pay interest on the loan before the due date of the obligation. Interest is no part of a debt unless so stipulated in the contract, but it may be awarded as damages for the wrongful detention of a debt. Warren Bros. Co. v. Hartford, etc., Co., 102 N.J.L. 616, 619 (E. & A. 1926); Fidelity Mut. Life Ins. Co. v. Wilkes-Barre & H.R. Co., 98 N.J.L. 507, 510 (E. & A. 1923). Courts of equity are free to decide all questions pertaining to interest according to considerations of justice and fair dealing in the given case. The relationship of the parties herein and all of the circumstances justify the Chancery Division's denial of interest as to the item of $250,000. This action was consistently adopted by the trial court when it excused plaintiff from the payment of interest on the $39,080.43 advanced by Kahn to plaintiff to aid the latter and his wife meet their personal income tax obligations.
Plaintiff contends that interest should have been allowed on the $250,000, at least from the time when he demanded an *351 accounting. However, the ownership of the scrap which was sold and yielded this sum was seriously in dispute. The Camden Forge plant had been purchased for $500,000. Of this price, only $5,000 was contributed by the joint venture, of which only $1,250 was put up by plaintiff. Kahn arranged a loan from Consolidated Products Co. for the other $495,000. It was not until the rights of the parties were finally established and an account stated that the issue of the $250,000 was resolved. We find no error or abuse of discretion in the trial court's withholding of interest on the sum under all of the circumstances herein. See Midler v. Heinowitz, 10 N.J. 123, 130 (1952), upholding the trial court's discretionary power to disallow interest in an accounting between parties to a joint venture.

III.
Besides the $250,000 received by Kahn and used for Condenser's needs, representing proceeds derived from the sales of scrap formerly owned by Camden Forge Company, the trial court found that there had been various diversions or misappropriations by Kahn of joint venture funds in the total amount of $181,400.60. The details thereof are fully explained in the comprehensive opinion of the trial court. Interest at 6% was charged against Kahn on each of these items from the times of the respective diversions, as particularly set forth in a schedule made part of the trial court's opinion. Where the diversions extended over stated periods of time, the trial court selected a median date from which the interest was to commence.
We see no merit in plaintiff's contention that Kahn should have been charged compound interest. We find no sound basis for disturbing the trial court's disposition of this phase of the case.

IV.
The trial court denied plaintiff's application for the allowance of counsel fees on the ground that it was precluded by R.R. 4:55-7 from granting the application. Plaintiff contends *352 that this ruling was erroneous because R.R. 4:55-7(b) authorizes the court "in its discretion" to make an allowance of counsel fees "out of a fund in court" and there was such a fund herein.
The trial court carefully considered this contention in its opinion, 83 N.J. Super. 382, and rejected it, holding that there was no "fund in court" within the scope of R.R. 4:55-7(b) under the facts herein. It found that the "services rendered by plaintiff's counsel were to advance the claims of his client and no one else. There can be no clearer case of an adversary proceeding." Id., at p. 387. It added, also at p. 387:
"* * * it is not unfair to saddle the full cost of the counsel fees in this litigation upon plaintiff for the reason that plaintiff is doing no more than merely advancing his own interests."
There is some implication in this last-quoted statement that rejection of plaintiff's application for counsel fees was based upon an exercise of the court's discretion to disallow the application, in addition to its expressed determination that this was not a "fund in court" situation.
Was this a "fund in court" case? The issue is fairly debatable, but we have concluded that the action, to the extent hereafter defined, did present such a case.
We find the facts herein somewhat analogous to those in Sarner v. Sarner, 38 N.J. 463 (1962). In that case, two plaintiffs, each holding a 10% interest in three corporations, brought suit against defendant, who owned the remainder of the stock of the corporations, to recover moneys allegedly due from defendant to the corporations. They also sought a judicial declaration of a partnership interest in a management concern and that defendant be ordered to account to them for profits in that partnership. The trial court ordered defendant to pay approximately $400,000 to the corporations, found that plaintiffs were partners in the management concern, and ordered defendant to account. It also allowed a fee of $25,000 to plaintiffs' counsel.
*353 On appeal, the Supreme Court decided in Sarner that there was a "fund in court" as the result of plaintiffs' action as minority stockholders, and that a counsel fee could be allowed therefrom because plaintiffs' litigation had benefited the three defendant corporations. It found that the affidavit of legal services was not definitive enough, because of "the unique nature of this mixed litigation," to make it possible to pass upon the allowance for services rendered in the derivative action involving the corporations, for which a counsel fee was sought. Apparently, the affidavit of legal services included services in that part of the case "purely personal to plaintiffs," namely, the partnership claim, for which no counsel fee had been sought and for which there was no legal basis for payment out of the corporate treasuries.
So, in the instant case, where the litigation was similarly mixed and much time was devoted to establishing plaintiff's interest in the joint venture  such as, which of three signed joint venture agreements was controlling  and in plaintiff's unsuccessful contending that Kahn's wife and two daughters were mere "fronts," with no genuine interest in the joint venture, the trial court lacked authority to award counsel fees for legal services relating to those issues.
It is undisputed that a stockholders' derivative action represents a typical controversy for the award of counsel fees under the "fund in court" provision. R.R. 4:55-7(b). Sunset Beach Amusement Corp. v. Belk, 33 N.J. 162, 168 (1960). The trial court apparently felt that a partnership or joint venture accounting action, instituted by one of the partners or joint venturers, in which it was also claimed that one of the parties had misappropriated assets belonging to the common fund, was not in the same category as a stockholders' derivative action. It stated:
"A partnership estate does not constitute a fund in court for the allowance of attorney's fees within the purview of R.R. 4:55-7(b). Schmerer v. Estate of Kirschenbaum, 39 N.J. Super. 475 (App. Div. 1956); Blut v. Katz, 36 N.J. Super. 185 (App. Div. 1955). It logically follows that an accounting action between two joint venturers does not create a `fund in court' within the scope of R.R. *354 4:55-7(b). Midler v. Heinowitz, 6 N.J. Super. 359, 365 (App. Div. 1950), affirmed on other grounds 10 N.J. 123 (1952)." (83 N.J. Super., at p. 386)
Those cases do contain language which tends to support the rule as stated by the trial court. However, that language must be understood in the light of the factual setting of each of those cases.
Schmerer, supra, involved a suit against the estate of a decedent, plaintiff claiming that he and decedent were partners. He sought an accounting and obtained a temporary injunction, restraining disposition of the firm's assets. Decedent's personal representative denied the existence of any partnership between plaintiff and decedent. The trial court ultimately found in defendant's favor and dismissed the complaint. But it allowed plaintiff's attorney a counsel fee on the theory that the restraint had placed a "fund in court." We reversed the allowance of a fee, holding there was no fund in court merely because disposition of the assets had been restrained. Obviously, Schmerer is readily distinguishable from the instant case, because plaintiff there did not establish any interest in the assets and had not recovered any assets for the benefit of a class.
In Blut v. Katz, supra, the executrix of a deceased partner sued the surviving partners for an accounting and was awarded a sum for the value of decedent's interest in the partnership. We held on those facts that the partnership estate was not a fund in court from which a fee could be allowed to the attorneys for plaintiff executrix. That was a straight partnership accounting proceeding. There was no contention that funds were being withheld. The only question was the value of the admitted assets. We stated therein that the mere fact, that, through some proceeding, the fund is subjected to the court's disposition, does not expose it to the allowance of an attorney's fee.
After posing the question as to what cases could subject a fund under the court's disposition to the allowance of a counsel fee, we said in Blut:
*355 "The usual case is one where a party (sometimes a fiduciary or a cestui que trust, but others are comprehended), acting for the benefit of a number of persons, undertakes a judicial proceeding in the interest of the fund, to protect, recover, increase it or adjust rights in it. It is but fair that these persons bear their share of the expense of that proceeding.
Upon this basis, an allowance may be made, under familiar and settled practice, for the protection of the fund through `an accounting' by a fiduciary and a passage of his accounts * * *." (36 N.J. Super., at pp. 188-189)
Plaintiff in Blut v. Katz did not satisfy these last quoted conditions but, as we said therein, "seeks a fee not out of moneys recovered * * * but out of the defendants' shares in the partnership. She has rendered no benefit to the entire partnership estate. She has not attempted to preserve or perform any service for defendants' shares; nor has she in any way, directly or indirectly, acted for defendants' benefit." Id., at pp. 190-191. Obviously, the instant case is factually distinguishable from Blut v. Katz. This was not a mere accounting action. Here, plaintiff succeeded in obtaining a judicial declaration that defendant Kahn held in trust for the benefit of the joint venture assets acquired in Kahn's name alone and withheld from the joint venture. Thus, the trial court might have allowed plaintiff's attorney a counsel fee, in the exercise of its discretion, under the above-quoted test referred to in Blut v. Katz. See, too, Tevander v. Ruysdael, 299 F. 746 (7 Cir. 1924).
In Midler v. Heinowitz, supra, plaintiff sued defendant for an accounting of their joint venture. An accounting was directed. Later, an application by plaintiff for the allowance of counsel fees was disallowed by the trial court. We affirmed that disallowance. Plaintiff did not argue there was a fund in court. Rather, plaintiff contended before our court that, the suit having been commenced in the old Chancery Court in 1943, he was entitled to a counsel fee under the provisions of R.S. 2:29-131, providing for the allowance of counsel fees by the former Court of Chancery, and that this statutory authorization, as further implemented by R.S. 2:16-73, had not *356 been superseded by the rules adopted by the Supreme Court under the 1947 Constitution. We held that Rule 3:54-7 (now R.R. 4:55-7), covering the allowance of counsel fees, effectively superseded R.S. 2:29-131 and that the authority theretofore vested in the Court of Chancery for the granting of counsel fees was now controlled by the afore-mentioned rule. We did so in reliance upon the case of John S. Westervelt's Sons v. Regency, Inc., 3 N.J. 472 (1950), which expressly so held. The issue of counsel fees was not pressed by plaintiff, after certification granted in the Supreme Court. Consequently, the Supreme Court, in affirming the judgment on other grounds, made no mention of the question of counsel fees.
In referring to the instant case as an "adversary proceeding" we are confident that the trial court did not mean to imply that its adversary character per se precluded an allowance of counsel fees. All contested litigation is adversary in nature. Sarner v. Sarner, supra, is a good example thereof. So, too, as Sarner illustrates, the action can be for the benefit of a class even though there be very few in the class. In Sarner there were only three stockholders, consisting of the two plaintiffs, each with a 10% stock interest, and the defendant with the controlling 80% interest. Yet, a counsel fee was held to be allowable for the services rendered in the stockholders' derivative action, whereby the dominant stockholder was required to return $400,000 to the common corporate fund. While the court in Sarner regarded the stockholders' suit as one brought for the benefit of all stockholders, it is quite obvious that the suit was basically for the benefit of the plaintiffs. Defendant Sarner was not actually benefited by being required to return $400,000 to the common fund. But this demonstrates that the pursuit by a plaintiff of his self-interest does not debar him from asking for counsel fees, if the suit is of benefit to a class at the same time.
In the instant case, the trial court found that defendant Kahn was a trustee of the assets acquired from Camden Forge Company and the joint venture was beneficiary of the trust. *357 There seems to have been created a resulting trust, the purchase price having been furnished by one party (the joint venture's $5,000 constituted the initial payment on account) and legal title having been taken in the name of another party (Herman Kahn). Plaintiff's action established that Kahn was such a trustee and forced an accounting by him as trustee. To the extent that Kahn was required to return assets to the trust fund (the Camden Forge plant has been turned over to a court-appointed receiver and sold), the trust fund has been increased and the members of the joint venture  excepting, realistically, Kahn himself  have been benefited. That Kahn's wife and two daughters have independent interests in the joint venture, and were not "mere fronts" for Kahn, as plaintiff himself contended, was established by the judgment of the Chancery Division and is not challenged on this appeal. So, too, on this trust fund concept, the trial court had the power to award plaintiff a counsel fee for the services rendered in increasing it, despite the opposition of defendant trustee. Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157 (1881); Pollock v. Bowman, 140 N.J. Eq. 417 (E. & A. 1947); Tevander v. Ruysdael, 299 F. 746 (7 Cir. 1924).
Defendants argue that Kahn's alleged misapplication of assets of the joint venture created at most a "constructive trust," which is not a "pure trust" at all, but a fiction of the law, which has been established for want of better terminology, to prevent an unjust enrichment and provide a remedy for restitution. 1 Restatement of the Law of Trusts, p. xi (1935 ed.); 4 Scott on Trusts (2d ed. 1956), § 461, pp. 3100, 3101; Moses v. Moses, 140 N.J. Eq. 575, 579 (E. & A. 1947); Beatty v. Guggenheim Exploration Co., 225 N.Y. 380, 122 N.E. 378 (Ct. App. 1919). As noted above, we regard the trust created as having been a "resulting" trust. The legal title was placed in Kahn's name but the property was acquired, at least in part, with funds of the joint venture, and the trial court found that it was intended to be joint venture property placed under Kahn's control as managing trustee. Thus, Kahn was in fact a resulting trustee, and not *358 merely a constructive trustee. His misapplications of the joint venture assets were as trustee. But, even if he were only a constructive trustee, such as a faithless agent, the trust relationship would still exist herein and the trust fund concept would still apply.
In holding that the trial court could have allowed a counsel fee to plaintiff's attorney, we wish to make it clear that we are not deciding that a counsel fee should have been awarded, or that plaintiff's attorney is entitled as of right, under the circumstances of this case, to a counsel fee. Where the case is one involving a "fund in court," the allowance of a counsel fee rests within the "discretion" of the court. R.R. 4:55-7(b). For aught we know, the trial court, upon a reconsideration of the application for counsel fees in the light of our opinion, may in its discretion and for valid reasons decide that no counsel fee should be allowed plaintiff's attorney. The opinion of the trial court on the main issue portrayed plaintiff, as well as defendant Kahn, as unworthy individuals, each with unclean hands. If the trial court in its discretion does allow plaintiff's attorney a counsel fee, the quantum thereof is for the trial court to fix.

V.
The trial court, in denying plaintiff's application for accountant's and appraisers' fees, felt that it was not unfair to make plaintiff bear the expenses of his accountant and appraisers "in prosecuting his individual interests." It was on this same ground  that plaintiff in this litigation was "doing no more than merely advancing his own interests"  that the application for counsel fees was also denied. The trial court recognized that plaintiff's accountant "labored long and hard to reconstruct the receipts and disbursements of the joint venture." 83 N.J. Super., at p. 387. Nevertheless, acting seemingly in the exercise of its discretion, the trial court rejected the application for allowance of fees for the services rendered by plaintiff's accountant and appraisers.
*359 N.J.S. 22A:2-8 provides that a party may include in his bill of costs, besides the normal statutory allowances, "[s]uch other reasonable and necessary expenses as are taxable according to the course and practice of the court or by express provision of law, or rules of court." The allowance of costs "is ordinarily discretionary with the court in the particular case." United States Pipe & Foundry Co. v. United Steelworkers of America, 37 N.J. 343, 355 (1962). The trial court distinguished the instant case from Sarner v. Sarner, supra, on the grounds that Sarner involved a court-appointed accountant and was in part a stockholders' derivative suit. True, the accountant and appraisers herein were not court-appointed, but served merely as aides to plaintiff. Reference was also made to Cintas v. American Car & Foundry Co., 133 N.J. Eq. 301, 304 (Ch. 1943), affirmed and modified on other grounds 135 N.J. Eq. 305 (E. & A. 1944), but the trial court found that case distinguishable because it was "a typical class action." 83 N.J. Super., at p. 388.
Here, too, the trial court may, upon our remand, very well adhere to its previous exercise of discretion and, perhaps, for good reason deny again plaintiff's application for payment of fees to his accountant and appraisers. But, in the light of our views expressed above anent Sarner, in relation to the question of counsel fees, the trial court will also reconsider on the remand the matter of accountant's and appraisers' fees. We reiterate that our remand does not imply that the trial court should exercise its discretion one way or the other.

VI.
We have considered the many claims of error advanced by defendants for a reversal of the judgment, including the numerous pretrial and trial rulings particularized in their comprehensive briefs. We find no sound basis in any of them for disturbing the judgment of the Chancery Division. The parties have stipulated that the fact findings of Judge Mintz are correct for the purpose of the appeal and cross-appeal. We are *360 satisfied that the conclusions drawn therefrom are logically and legally sound.

VII.
We turn now to Condenser's appeal, in which it challenges the propriety of the order of the trial court, made on March 30, 1962, denying its motion to intervene.
Condenser did not appeal from that order or take any other action seeking a legal review of it until June 12, 1964, more than two years later, when it joined in the cross-appeal of the defendants. Plaintiff contends that Condenser's appeal was from a final order of the court, is patently out of time, not having been taken within 45 days after entry of the order, as required by R.R. 1:3-1(b) and R.R. 2:3, and should be dismissed for lack of timeliness.
While there is some authority indicating that an order granting intervention is interlocutory, Mueller v. Eucenham, 33 N.J. Super. 156, 161 (App. Div. 1954); Looman Realty Corp. v. Broad St. Nat. Bank of Trenton, 74 N.J. Super. 71, 78 (App. Div. 1962), certification denied 37 N.J. 520 (1962), an order denying intervention has been deemed to be final. State by McLean v. Lanza, 60 N.J. Super. 130, 136 (App. Div. 1959), certification denied without prejudice May 25, 1959, affirmed 39 N.J. 595 (1963); Brotherhood of Railroad Trainmen v. B. & O.R.R. Co., 331 U.S. 519, 67 S.Ct. 1387, 91 L.Ed. 1646 (1947). In Dickinson v. Petroleum Conversion Corporation, 338 U.S. 507, 513, 70 S.Ct. 322, 325, 94 L.Ed. 299 (1950), the court said: "We have held that an order denying intervention to a person having an absolute right to intervene is final and appealable." See also 6 Moore, Federal Practice, pp. 255-257 (1953); 5 op. cit., at pp. 35 et seq. A distinction is drawn in the federal cases between intervention as a matter of right and permissive intervention. In this connection, Moore says:
"* * * an order denying intervention where the right is absolute is final; an order denying permissive intervention, although rejecting a claimed procedural right with finality, would ordinarily be non-appealable *361 because of the discretionary nature of the denial." (at pp. 256-257)
We find it unnecessary to decide whether that distinction should be made under our practice. Condenser sought intervention as of right and permissive intervention. R.R. 4:37-1; R.R. 4:37-3. The denial of intervention as of right certainly was final and appealable as of March 30, 1962, when the order of denial was entered. Appeal therefrom was clearly out of time and we have no power to extend that time beyond the permissive 30 days allowed by R.R. 1:27B. Insofar as the order denied permissive intervention, if the appeal therefrom is not also out of time, we find that the trial court acted within its sound discretion in denying such intervention because of Condenser's long delay in seeking intervention and the further delays which would probably have resulted, if intervention had been allowed, from Condenser's introduction into the case of additional issues, thus making complex litigation more complicated.
Even were we to assume that Condenser's appeal is within time, it has made no showing on this appeal that it has been prejudiced by the order denying intervention. We are not advised of any evidence which Condenser could have introduced on the issues before the trial court which Kahn, its sole owner, did not introduce or could not have introduced. The same attorney represented both Kahn and Condenser.
Condenser has an action pending in the Chancery Division against Grober which, as we understand, involves issues other than those decided by Judge Mintz in the Chancery Division. In our determination that Condenser's appeal from the order denying intervention is out of time and, even if it were within time, no prejudice to Condenser has been shown by Condenser by reason of that order, we make no determination as to the effect upon Condenser of the judgment against Kahn, individually. Condenser was denied intervention in the instant suit and was not a party thereto. Whether it is bound by res adjudicata or collateral estoppel, we do not deem necessary to decide herein.
*362 The case is remanded to the Chancery Division for a reconsideration of the issues of counsel fees, as well as accountant's and appraisers' fees. The judgment and orders under review are in all other respects affirmed. We do not retain jurisdiction. No costs or counsel fees are allowed to any party on this appeal as against any other party.