852 A.2d 258 (2004)
371 N.J. Super. 167
In re March 22, 2002 Motion to Dismiss and Intervene in the PETITION OF HOWELL TOWNSHIP, MONMOUTH COUNTY.
In re October 4, 2002 Motion to Intervene in the Petition of Howell Township, Monmouth County.
In re Failure of New Jersey Council on Affordable Housing to Process Timely the Township of Howell's Petition for Substantive Certification.
Superior Court of New Jersey, Appellate Division.
Argued June 2, 2004.
Decided July 14, 2004.
*259 Jeffrey Kantowitz, West Orange, argued the cause for appellant Elon Associates (Goldberg, Mufson & Spar, attorneys; Mr. Kantowitz, of counsel and on the brief).
Santina M. Bombaci, argued the cause for respondent Township of Howell (DiFrancesco, Bateman, Coley, Yospin, Kunzman, Davis & Lehrer, attorneys; Jeffrey B. Lehrer, Warren, of counsel and on the brief; Ms. Bombaci, on the brief in the A-3531-02T3 appeal).
Pamela E. Gellert, Deputy Attorney General, argued the cause for respondent New Jersey Council on Affordable Housing (Peter C. Harvey, Attorney General, attorney; Michael J. Haas, Assistant Attorney General, of counsel; Ms. Gellert, on the brief).
Before Judges SKILLMAN, COBURN and WELLS.
The opinion of the court was delivered by SKILLMAN, P.J.A.D.
On March 20, 2001, we reversed a final decision of the Council on Affordable Housing (COAH) which had granted substantive certification to Howell Township's "second cycle" affordable housing plan and remanded the matter to COAH for reconsideration in light of factual materials submitted by appellant Elon Associates, L.L.C. In re Township of Howell Petition for Substantive Certification, A-1586-98T2. Although more than three years have elapsed since we issued that opinion, COAH has not yet completed the remand. Elon has filed three new appeals directed at COAH's lengthy delay in completing its review of Howell's revised affordable housing plan.[1] Because these appeals rest on the same factual foundation and present related issues, we consolidate them.
In view of the fact that Elon's arguments are based on COAH's delay in completing its review of Howell's revised affordable housing compliance plan, it is necessary to recount the procedural history of this matter in some detail.
*260 In March 1995, Howell filed a petition with COAH for substantive certification of its plan to satisfy its "second cycle" affordable housing obligations,[2] which COAH determined to be 1109 units, of which 690 were satisfied by credits for the actions Howell had taken to satisfy its "first cycle" obligations. One of those credits was for the rezoning of a fifty-eight acre tract in the southern part of Howell, commonly referred to as the Weiner tract, on which the contract purchaser, MGD Holdings, HOL, L.L.C. (MGD), proposed to construct a 392 unit housing development that would include 79 affordable units.
After COAH rejected its initial compliance plan, Howell submitted several revisions, and COAH granted conditional substantive certification to a revised plan in April 1998. After Howell satisfied the conditions of this approval, COAH granted final substantive certification in October 1998.
Elon, the owner of a forty-eight acre tract of land in Howell on which it proposes to construct a development that would produce seventy-two affordable units, filed a notice of appeal from the COAH resolution granting substantive certification. That appeal challenged COAH's recognition of a seventy-nine unit credit for the proposed affordable units on the Weiner site, which remained undeveloped even though more than ten years had elapsed since its inclusion in Howell's first cycle plan. Elon contended that the factual materials it presented to COAH showed that this site is encumbered by wetlands and lacks access to water and sewer, and therefore does not present a realistic opportunity for construction of a high-density residential development that includes affordable housing. Elon's appeal also challenged COAH's denial of its motion to intervene in the proceedings relating to Howell's petition for substantive certification.
We affirmed COAH's denial of Elon's motion to intervene. However, we reversed COAH's substantive certification of Howell's second cycle compliance plan and remanded the matter to COAH. We concluded that the factual materials Elon had submitted to COAH raised serious questions whether the Weiner site affords a realistic opportunity for the construction of affordable housing and that COAH erred in refusing even to consider those materials.
On April 30, 2001, COAH's then Executive Director sent letters to Howell and Elon seeking their views concerning the procedures to be followed on the remand, and both parties responded by the middle of May. On June 11, 2001, the Executive Director sent another letter which requested Howell to provide various documentation and answer questions relating to the suitability of the Weiner site for high-density residential development that includes affordable housing.
On July 3, 2001, MGD sent a letter to COAH, which stated in pertinent part:
Despite the prior assertions made by Elon Associates, my client's site is developable. An application [for site plan approval] was submitted to the Howell Township Planning Board in April, and we are waiting for a hearing date. The *261 application would provide 34 affordable rental units, yielding 68 credits.
The wetlands have been delineated and an L.O.I. was issued on April 18, 2000. Water service from New Jersey American Water Company is available. The developer will be constructing the sewer improvements shown on the plans filed with the Planning Board.
This letter was supported by an engineer's affidavit, which indicated that MGD's proposed development would be served by public water and that MGD would construct all the improvements required to provide access to a public sewer system. Although the record before us does not include any response from Howell to COAH's June 11th letter, Howell apparently relied upon MGD's submission as its response to COAH's inquiries.
On July 6, 2001, the Supreme Court denied Elon's and Howell's petitions for certification of our prior decision. In re Township of Howell Petition for Substantive Certification, 169 N.J. 608, 782 A.2d 426.
On August 21, 2001, Elon sent a letter to COAH's Executive Director, which contended that the materials submitted by MGD did not demonstrate that the Weiner site was suitable for a high-density residential development that would include affordable housing units and urged COAH to require Howell to submit a new petition for substantive certification.
On October 30, 2001, Elon sent another letter to COAH's Executive Director, which noted that COAH had not taken any action regarding Howell's affordable housing plan since its June 11th letter and asked for a meeting with COAH. The Executive Director responded by a letter dated November 5, 2001, which indicated that COAH's staff was reviewing information relating to the Weiner site and that COAH needed additional documents from Howell to complete its review.
On February 13, 2002, COAH's staff issued a report, entitled "Site Review in Response to Court Remand Howell Township," which concluded that the Weiner site was "approvable, available, developable and suitable" but that the "availability of sewer is a contested issue of fact necessitating the issue being transferred to the Office of Administrative Law (OAL) for a determination as to the realistic opportunity for sewer service to [the site]."
After receiving comments from Howell, Elon and MGD regarding this report, COAH staff issued a supplemental report, dated April 24, 2002, which concluded that in view of continuing uncertainty concerning the availability of sewer service to the Weiner site, the site "does not provide a realistic opportunity for affordable housing within six years." Based on this conclusion, the supplemental report withdrew the February 13th report's recommendation that the matter be transferred to the OAL and instead recommended that COAH direct Howell to devise a new compliance plan and submit a re-petition for substantive certification. The supplemental report also stated:
[The Weiner site] may remain in the plan only if Howell can demonstrate with clear documentation and timetables that [this site] presents a realistic opportunity for [affordable] units.
On March 22, 2002, during the period between the issuance of the February 11th and April 24th COAH staff reports, Elon moved to intervene in the remand proceedings before COAH and to dismiss Howell's petition for substantive certification. COAH heard oral argument on this motion on June 5, 2002, but did not issue any ruling until the following January.
On September 9, 2002, COAH's staff issued another report, which concluded *262 that the Weiner site was suitable for a high-density residential development that includes affordable housing. This report also noted that an application for site approval was pending before the Howell Planning Board, "the outcome of which will quantify site suitability," and requested Howell to submit additional information regarding the feasibility of MGD's proposed development.
On October 4, 2002, Elon filed a second motion to COAH to intervene in the remand proceeding and to dismiss Howell's petition.
On October 7, 2002, Howell's governing body adopted a resolution which proposed to amend its affordable housing compliance plan by, among other things, deleting most of the Weiner site from the plan and entering into a regional contribution agreement to satisfy the resulting shortfall in affordable housing units.
On November 4, 2002, Howell requested COAH to extend the time for amending its compliance plan in accordance with the October 7, 2002 resolution or alternatively providing the information requested in the September 9th COAH staff report. On November 13, 2002, COAH granted Howell an extension until January 8, 2003 to re-petition for substantive certification with an amended compliance plan or provide a comprehensive response to the September 9th COAH staff report.
On December 5, 2002, Howell's planning consultant forwarded an amended affordable housing plan to the governing body for its review. Pursuant to the governing body's October 7th resolution, the amended plan deleted the Weiner site from the plan and recommended that Howell make up any shortfall with a regional contribution agreement with Belmar or Freehold.
By letters dated December 17 and 20, 2002, Howell requested an additional three-week extension of time to respond to COAH. This correspondence noted that a new compliance plan had been drafted and that a hearing on the plan was scheduled for January 2, 2003. It also noted that, as a result of the November election, a majority of the membership of the governing body would be changing on January 1, 2003.
On January 8, 2003, COAH granted the requested extension until January 31, 2003. In so doing, COAH adopted an order that required Howell to amend its compliance plan and re-petition for substantive certification by that date. COAH also indicated that if Howell failed to meet this deadline, it would be required to show cause why it should not be dismissed from COAH's jurisdiction. In addition, COAH denied both of Elon's motions to intervene and to dismiss Howell's petition for substantive certification. These decisions were memorialized by written decisions dated February 4, 2003. Elon filed separate notices of appeal from the denials of its March 22 and October 4, 2002 motions.
On January 31, 2003, Howell filed a re-petition for substantive certification that deleted the Weiner site from its compliance plan.
On February 6, 2003, Elon filed a notice of appeal from COAH's alleged "inaction" in completing the proceedings on remand from this court. On February 20, 2003, Elon filed a motion for a summary disposition of that appeal under which COAH would be ordered to issue a final agency decision on Howell's petition for substantive certification within thirty days or, in the alternative, COAH's jurisdiction over the petition would be terminated and the matter transferred to the Law Division. On April 2, 2003, we denied the motion.
On March 27, 2003, Elon filed objections to Howell's re-petition for substantive certification. MGD, which by that time had *263 acquired title to the Weiner site, also filed objections, contending that Howell had improperly deleted its site from the revised compliance plan.
For the next fourteen months, COAH failed to take any action regarding Howell's re-petition for substantive certification. At the oral argument of this appeal, we asked COAH's Executive Director to submit a certification explaining the reasons for this administrative inaction. In response, the Executive Director submitted a certification, which is quoted at length later in this opinion.
After the objections to Howell's re-petition for certification were filed, Howell entered into a settlement with MGD on September 15, 2003. The record does not disclose the terms of that settlement, which in any event are irrelevant to the issues presented by this appeal.
On May 28, 2004, COAH sent a "pre-mediation" report prepared by its staff to the parties. Howell has until July 27, 2004 to provide certain information requested in that report.
On its appeals from COAH's denials of its March 22, 2002 and October 4, 2002 motions, Elon argues that COAH erred in denying its motions to intervene and to dismiss Howell's petition for substantive certification.[3] We reject these arguments and affirm the final decisions memorialized by COAH's February 4, 2003 written opinions.
In its appeal from COAH's "inaction" in failing to complete the proceedings on remand, Elon argues that COAH's jurisdiction should be terminated and the matter transferred to the Law Division or, in the alternative, that COAH should be compelled to complete its administrative process within a specified period of time. Elon also argues in its most recent submission that this court should grant Elon "site-specific" relief. We agree with Elon that there has been an unjustifiable delay in COAH's completion of the proceedings on remand and that an order for the early completion of those proceedings is required. However, we conclude that a termination of the proceedings before COAH and transfer to the Law Division is not warranted at this time. We also reject Elon's claim for "site-specific" relief.

I
Initially, we consider COAH's argument, presented for the first time in its answering brief, that Elon's appeals from COAH's denial of its March 22 and October 4, 2002 motions are interlocutory and therefore should be dismissed. Elon argues in its reply brief that those decisions are appealable as of right because they denied motions for intervention. Compare Grober v. Kahn, 88 N.J.Super. 343, 360-61, 212 A.2d 384, 393-94 (App.Div.1965), rev'd on other grounds, 47 N.J. 135, 219 A.2d 601 (1966) with Savage v. Weissman, 355 N.J.Super. 429, 435, 810 A.2d 1077, 1080-81 (App.Div. 2002). We have no need to decide this issue because we conclude that even if the denials of the March 22 and October 4, 2002 motions were interlocutory, leave to appeal should be granted nunc pro tunc. See R. 2:2-4; R. 2:4-4(b)(2). COAH never moved to dismiss these appeals as interlocutory, and they have now been fully briefed. Furthermore, these appeals are closely related factually to Elon's "inaction" appeal, and COAH acknowledges that that appeal is cognizable at this time. Therefore, we proceed to consideration of the merits of the three appeals.

*264 II
Elon's argument that COAH erred in denying its motion to intervene requires only brief discussion. Although our prior opinion affirmed the part of COAH's 1998 decision that denied Elon's motion to intervene, and thus Elon has not technically had the status of an intervenor in the proceedings on remand, COAH has nevertheless treated Elon as if it were a party. COAH solicited Elon's views as to how the remand should be conducted, considered the evidential materials Elon submitted and ruled on the merits of Elon's motions to dismiss Howell's petition for substantive certification. Moreover, COAH has not questioned Elon's standing to appeal from the denial of those motions. In addition, since Howell submitted its re-petition for substantive certification, Elon now occupies the status of an objector in the pending proceedings before COAH. See N.J.S.A. 52:27D-314; N.J.A.C. 5:91-4.1 to -4.2. As a result, Elon is entitled to mediation of its objections to Howell's revised compliance plan, and if mediation is unsuccessful, to a transfer of the matter to OAL as a "contested case." N.J.S.A. 52:27D-315(a), (c); N.J.A.C. 5:91-7.1(a). Thus, Elon has essentially the same rights as an objector before COAH as an intervenor in a Superior Court or OAL proceeding. Accordingly, we affirm COAH's denial of Elon's motions to intervene.

III
Our prior opinion concluded that Elon's "submission to COAH raised serious questions as to whether the Weiner site affords a realistic opportunity for the construction of affordable housing," and therefore we "required [COAH] to consider that information in determining whether Howell is entitled to a credit for the seventy-nine units of affordable housing proposed to be constructed on that site." Accordingly, we reversed COAH's grant of substantive certification to Howell's compliance plan and remanded the matter to COAH for reconsideration in light of the information Elon had submitted.
In conformity with this mandate, COAH undertook to obtain additional information regarding the feasibility of constructing a high-density residential development that includes affordable housing on the Weiner site. On June 11, 2001, its then Executive Director requested Howell to provide various information relevant to whether the Weiner site provided a realistic opportunity for the construction of seventy-nine units of affordable housing.
Less than a month later, one of MGD's principals sent a letter to COAH which indicated that it had submitted an application for site plan approval to the Howell Planning Board in April and that it intended to proceed with a residential development project on the Weiner site that would include thirty-four affordable housing units for which Howell would receive sixty-eight "credits." Although the record before us does not include any response from Howell to the Executive Director's June 11th letter, a subsequent COAH memorandum indicates that Howell supported MGD's position that a development project containing affordable housing units could be constructed on the Weiner site and that Howell would satisfy the balance of its affordable housing obligation by a regional contribution agreement with Freehold.
On August 21, 2001, Elon sent a letter to COAH which disputed the assertions in MGD's submission to COAH and contended that the Weiner site was not suitable for a high-density residential development. Thus, five months after our remand, COAH was confronted with conflicting factual allegations by MGD and Elon as to *265 whether the Weiner site was suitable for the construction of affordable housing.
COAH responded to this conflict by undertaking its own investigation of the suitability of the Weiner site for high-density residential development. This investigation included a visit to the site, discussions with MGD's project engineer, review of MGD's revised application for site plan approval, and discussions with Howell's municipal engineer and the Executive Director of the Manasquan River Regional Sewerage Authority.
Based on this investigation, COAH's staff concluded in a February 13, 2002 report that the Weiner site appeared suitable for the construction of a residential development that includes affordable housing, but that the availability of sewer service was a contested issue of fact that would require referral of the matter to the OAL. After receiving Elon's comments regarding this report, COAH's staff changed its position and concluded in a supplemental report dated April 24, 2002 that there were so many questions concerning the developability of the Weiner site that COAH should direct Howell to devise a new compliance plan and re-petition for substantive certification. On September 9, 2002, after receiving additional materials from Elon, COAH's staff again changed its position and concluded, as it had in February 2002, that the Weiner site was suitable for a high-density residential development. Thus, COAH's staff issued three separate reports during 2002 which reached conflicting conclusions regarding the developability of the Weiner site.
In any event, this issue became moot when Howell's governing body made a decision on October 7, 2002, which it reaffirmed on January 31, 2003, to adopt a revised affordable housing compliance plan that did not involve development of the Weiner site and instead proposed to provide the seventy-nine affordable housing units which that site would have provided by other means. However, by the time Howell made this decision, nearly two years had elapsed since this court's remand to COAH. The question is whether COAH's failure to make any finding concerning the suitability of the Weiner site for affordable housing for almost two years, and Howell's subsequent decision to adopt a new compliance plan that does not include that site, required COAH to grant Elon's motions to dismiss Howell's petition for substantive certification.
In denying Elon's motion to dismiss Howell's petition for substantive certification, COAH stated:
[COAH] does not agree that dismissal and/or accelerated denial are appropriate here. Howell has voluntarily participated in the COAH process and previously received substantive certification. Moreover, [Howell] has attempted to respond to COAH's inquiries on remand in good faith. While COAH notes that Howell has requested several extensions in responding to some of [COAH's] requests, [COAH] is also aware that [Howell] has been entertaining the option of repetitioning COAH with a new housing element and fair share plan and has recently had a change of administration within its governing body.
We find no abuse of discretion in COAH's decision to deny Elon's motion to dismiss for these reasons. The record indicates that the primary cause of COAH's delay in moving forward with the remand of this case during the period from July 2001 to October 2002 was not Howell's delay in responding to COAH's inquiries but rather the shifting positions of COAH's staff as to whether the Weiner site provided a realistic opportunity for the construction of affordable housing. Moreover, Elon and MGD both submitted substantial *266 documentation to COAH relating to this issue, and COAH's staff undoubtedly expended substantial time and effort in reviewing those submissions and preparing their series of recommendations. While this process was ongoing, Howell had no way of knowing whether COAH ultimately would reaffirm or reject Howell's decision to include the Weiner site in its compliance plan. In fact, COAH still had not made that determination when Howell decided to eliminate the Weiner site from its plan and re-petition for substantive certification. Under these circumstances, it would be unfair to deprive Howell of the opportunity to have COAH review its revised compliance plan.

IV
Finally, we consider Elon's appeal from COAH's "inaction" in completing the remand and rendering a final decision on Howell's re-petition for substantive certification. While Elon's appeals from COAH's denials of its March 22 and October 4, 2002 motions to dismiss were directed solely at COAH's processing of the remand up until January 8, 2003, and the only relief they sought was a dismissal and transfer to the Law Division, this appeal is addressed to the entire period of the remand up to the present date and seeks not only a dismissal of the proceedings before COAH and transfer to the Law Division but also, in the alternative, an order compelling COAH to complete its proceedings by a specified date.
Howell argues that this appeal is barred under the doctrine of res judicata by this court's April 3, 2003 order denying Elon's motion for summary disposition. However, summary disposition is simply a procedural vehicle for the early disposition of an appeal "whose ultimate outcome is so clear as not to require further briefs or a full record for decision." GE Capital Mortgage Servs., Inc. v. New Jersey Title Ins. Co., 333 N.J.Super. 1, 5, 754 A.2d 558, 560 (App.Div.2000). Therefore, a denial of summary disposition is not a decision on the merits. Moreover, even if our denial of summary disposition could be viewed as a decision on the merits, a determination that COAH's delay in completing the remand had not reached a point where judicial intervention was required as of April 2003 would not preclude the court from revisiting this issue after the expiration of more than another year without COAH issuing its final decision.
On our initial review of this appeal, we noted that the parties' appendices did not include any report or even any correspondence from COAH after it received the objections to Howell's re-petition for substantive certification in late March 2003. In an effort to fill this evidentiary vacuum, we requested COAH's Executive Director to submit a certification explaining the reasons for this administrative inaction and COAH's projected timetable for completion of the remand. We consider it appropriate to quote most of her response:
1. I am employed by [COAH] and serve as [its] Executive Director. I have held this position since October 1, 2003, when I was appointed by the COAH Board. As Executive Director, I am responsible for overseeing and managing the handling of administrative matters that require [COAH's] attention.
...
2. Preliminarily, I note for the Court's convenience, that a certification dated March 17, 2003, from COAH staff planner Keith Henderson was previously prepared in this matter and explained the action which COAH had taken with regard to Howell Township since the time of the Court's remand in In re Township of Howell Petition for Substantive *267 Certification, A-1586-98T2....
3. On March 31, 2003, the time for objectors to file objections with COAH regarding Howell's amended housing element and fair share plan ended. COAH received four objections to Howell's plan during the objection period. Both Elon and MGD Holdings, Inc .... filed objections to Howell's plan.
4. On April 18, 2003, Mary Beth Lonergan, COAH's then Supervising Planner, left COAH's employ. Although not officially appointed to the position of Supervising Planner until June 28, 2003, Keith Henderson, the COAH staff planner then responsible for reviewing Howell's plan took over the responsibilities of COAH's Supervising Planner upon Ms. Lonergan's resignation. In this capacity, Mr. Henderson became responsible for supervising seven COAH staff planners. In addition, Mr. Henderson's responsibilities include: supervising the work assignments of all COAH planners; supervising the review of all aspects of a housing element and fair share plan, including regional contribution agreements (RCAs), development fees, spending plans, and mediation reports; assisting in the development of COAH's regulations; and training new planning staff. In light of the additional responsibilities assumed by Mr. Henderson as COAH's Supervising Planner, his previous responsibilities as the COAH staff planner in charge of reviewing Howell's plan were ultimately transferred to a new COAH planner, Barbara Walsh.
5. Ms. Walsh, an experienced planner with excellent planning credentials, joined the COAH staff in May 2003. Ms. Walsh was assigned some of [COAH's] most complex municipal fair share plans, including Dover and Howell, to review. Accordingly, it took Ms. Walsh some time to become familiar with the complex history of the Howell matter.
6. Also, during this time, as noted above, there was a change in COAH's Executive Director, and I was appointed to this position on October 1, 2003. In addition, it should be noted that since this time and to the present time [COAH] has been in the process of hiring additional staff to assist it in performing its statutory duties. For example, three new [COAH] staff have been hired, including an additional staff person to conduct [COAH] mediation.
7. In light of the above-noted personnel changes, as well as the lengthy and complex history involved with Howell's petition for substantive certification, it took COAH staff some time to prepare the pre-mediation report in this matter. However, that report was ... sent to the parties on May 28, 2004. Howell has until July 27, 2004 to provide the information requested in the report. In the meantime, COAH staff contacted the parties on May 28, 2004 in order to schedule mediation to begin in July.
8. Under COAH's rules, mediation may be conducted for up to 90 days after the first scheduled mediation date. Extensions of this period of mediation may be granted by [COAH] for good cause shown....
9. In this matter it is expected that mediation can be completed within the 90 day time period provided by COAH's rules.
10. There are several possible outcomes that may result from the mediation. Mediation may resolve all the objections and, therefore, amendments to Howell's plan and a re-petition may be required to reflect the agreements reached during mediation. Alternatively, *268 mediation may conclude without any substantive changes to the fair share plan, in which case COAH staff can complete its review of the current fair share plan. Still another possibility is that mediation will not resolve all of the objections, and issues of material fact may arise which require transmittal to the [OAL] for resolution. While, [COAH] generally requests that matters transferred to the OAL are resolved as quickly as practicable, such results are not always achieved. In any event, within 30 days of the conclusion of mediation in this matter, COAH will issue a mediation report to all the parties. The report will be served on Howell, the objectors and any other participants in the mediation, all of whom will have fourteen days to comment on the same. Thereafter, this report and comments thereto are presented to [COAH]. COAH staff will present the mediation report to [COAH] at the next regularly scheduled meeting after the conclusion of the aforementioned 30 day period. Assuming transfer to OAL is not required, in total, the process of preparing the mediation report and reporting the comments thereon to [COAH] should take no longer than 5 months, consisting of 90 days for mediation, 30 days to prepare the report, and a maximum of 30 days from the preparation of the report to the next regularly scheduled [COAH] meeting.
11. Upon conclusion of mediation, if no re-petition or transfer to OAL is required, the municipality may proceed to substantive certification. COAH staff will complete a compliance report to be issued to all the parties within 30 days of the issuance of the mediation report. Thereafter, at the next regularly scheduled [COAH] meeting, [COAH] can vote on the substantive certification of Howell, provided Howell submits all of the information requested in the May 28, 2004 premediation report.
12. Alternatively, upon conclusion of mediation, if amendments to the plan are required, [COAH] shall direct the municipality to re-petition within 60 days. Once a re-petition is received by [COAH], a new 45 day objection period would begin.
13. Having reviewed the history of this matter, I am aware that personnel changes as well as the complex nature of the Howell matter, have delayed resolution of this matter. However, it is my intention to ensure that this matter is resolved as quickly as possible under [COAH's] rules and pursuant to the mandate of the Fair Housing Act.
This certification indicates that COAH's only action during the fourteen-month period between its receipt of the objections to Howell's re-petition for certification in March 2003 and May 28, 2004 was the preparation by COAH's staff of a "pre-mediation report." The certification does not indicate when work on this report began or how much time it took to complete. However, based on our own review of the document, it is difficult to see how it could have taken more than a few days to prepare. Thus, COAH's only explanation for this fourteen-month delay is the turnover in its staff that occurred during that period.
We reject this purported justification for COAH's inaction. Changes in the identity of individuals who occupy high-level government positions are commonplace. When such changes occur, one of the primary responsibilities of any newly appointed official is to assure continuity of governmental operations. An agency's discharge of its statutory responsibilities cannot be put on hold while a new official becomes familiar with every pending matter.
*269 Furthermore, the changes in COAH's staff were less significant than the Executive Director's certification suggests. Keith Henderson, the staff planner who had been responsible for reviewing Howell's compliance plan and who prepared the thirty-one page September 9, 2002 COAH staff report analyzing that plan, was appointed supervisory planner in the spring of 2003. Thus, the COAH staff member who was most familiar with Howell and the history of its efforts to satisfy its second cycle affordable housing obligations remained available to review its new plan or to assist one of his subordinates in performing this responsibility. Moreover, the pre-mediation report that was eventually prepared by another COAH planner tracks Henderson's September 9, 2002 report in most respects.
In addition, COAH's delay in processing Howell's re-petition for certification must be viewed in light of the prior history of this administrative proceeding. By the time COAH received objections to Howell's re-petition, two full years had elapsed since our remand. During that period, there had been several inadequately explained delays in COAH's reconsideration of Howell's compliance plan. Moreover, Elon had filed this appeal, which alleged that COAH had been guilty of inexcusable delay in completing the remand and sought judicial intervention. Consequently, COAH should have realized that Howell's re-petition was not simply another case on its docket but rather a matter that had to be assigned scheduling priority. For these reasons, we conclude that COAH's delay in completing the pre-mediation report and scheduling mediation was unjustifiable.
We therefore must consider what relief should be provided to redress this administrative inaction. In its most recent submission, Elon strenuously argues that a remand with a direction to COAH to complete its proceedings by a specified date would not provide adequate relief for COAH's delay and that this court should instead grant Elon "site-specific relief." Such relief would be inappropriate. Howell has decided to meet the unsatisfied portion of its affordable housing obligation without the inclusion of Elon's site in its plan, and it is entitled to a determination of the adequacy of that revised plan. Furthermore, even if Elon had prevailed in Mount Laurel litigation against Howell, it would be entitled to the "site-specific relief" of a "builder's remedy" only if its site was suitable for a high-density residential development that includes affordable housing. See S. Burlington County N.A.A.C.P. v. Township of Mount Laurel, 92 N.J. 158, 279-80, 456 A.2d 390, 452 (1983). In addition, Howell would be entitled to an evidentiary hearing before this relief could be awarded because it contests the suitability of Elon's site for such development. Therefore, we reject Elon's claim for site-specific relief.
In the alternative, Elon argues that this court should order dismissal of Howell's petition for substantive certification, terminate COAH's jurisdiction, and transfer the case to the Law Division, because the record shows that COAH is incapable or unwilling to properly perform its statutory responsibilities. In support of this argument, Elon relies upon the Supreme Court's statement in Hills, in upholding the constitutionality of the FHA, that if the FHA "achieves nothing but delay, the judiciary will be forced to resume its appropriate role." Hills Dev. Co. v. Township of Bernards, 103 N.J. 1, 23, 510 A.2d 621, 633 (1986).
Although the delay in the administrative process manifested by the record in this case is inexcusable and disturbing, we are hesitant to grant the far-reaching relief *270 Elon seeks. The party that would be most directly impacted by dismissal of Howell's re-petition and transfer to the Law Division is not COAH but Howell. However, the record does not indicate that Howell bears any substantial responsibility for the delay in completion of the remand, particularly in relation to COAH's failure to schedule mediation on Howell's re-petition for substantive certification. In fact, Howell has asked COAH several times about the status of the matter and when mediation will be scheduled. Furthermore, Elon asserts that COAH's delay in completing the remand is not an aberration but simply one example of COAH's "track record of delay in [a] myriad [of] cases." Consequently, if COAH's delay in this case were found to require dismissal of Howell's re-petition and transfer to the Law Division, the same relief might well be warranted in many other cases. In view of the Supreme Court's strong endorsement of COAH's administrative procedures in Hills and later cases, see, e.g., Alexander's Dep't Stores v. Borough of Paramus, 125 N.J. 100, 111-12, 592 A.2d 1168, 1173-74 (1991); Holmdel Builders Ass'n v. Township of Holmdel, 121 N.J. 550, 576, 583 A.2d 277, 290 (1990), we question whether it would be appropriate for this court to declare, as Elon urges, that experience has shown reliance upon COAH's procedures to be futile and that the judiciary should resume jurisdiction over cases that seek to enforce municipal affordable housing obligations.[4] Rather, we conclude that COAH should be afforded an additional opportunity to complete the remand from this court without further delay.
If a state administrative agency fails to complete its proceedings in a timely manner, a party adversely affected by such inaction may apply to this court for an order to compel the agency to act. See Sod Farm Assocs. v. Township of Springfield, 366 N.J.Super. 116, 131-34, 840 A.2d 885, 895-97 (App.Div.2004); In re Failure by Dep't of Banking & Ins., 336 N.J.Super. 253, 261, 764 A.2d 494, 498 (App.Div. 2001); Hosp. Ctr. at Orange v. Guhl, 331 N.J.Super. 322, 329-30, 333-36, 751 A.2d 1077, 1080-85(App.Div.2000); Johnson v. New Jersey State Parole Bd., 131 N.J.Super. 513, 519, 330 A.2d 616, 619-20 (App. Div.1974), certif. denied, 67 N.J. 94, 335 A.2d 47 (1975). This form of application does not seek to compel a specific form of agency action; it only seeks a remedy for arbitrary inaction. See Guhl, supra, 331 N.J.Super. at 333-34, 336, 751 A.2d at 1082-83, ; see also Switz v. Township of Middletown, 23 N.J. 580, 587-88, 130 A.2d 15, 18-19 (1957).
Such relief is clearly required in this case. More than three years have elapsed since our remand to COAH. During the last year and a half, the only action COAH has taken to complete the remand is to prepare a pre-mediation report and schedule mediation. The certification of COAH's Executive Director reflects a disturbing lack of appreciation of the agency's obligation to discharge its statutory responsibilities in an expeditious manner. The certification also indicates that COAH is unlikely to complete the proceedings on remand within a reasonable period of time without judicial intervention. Therefore, despite our reluctance to undertake supervision of a state agency's operations, we are constrained to establish a schedule for completion of the remand.
Accordingly, we affirm COAH's January 8, 2003 final decisions, memorialized by its February 4, 2003 written opinions, which *271 denied Elon's motions to intervene and to dismiss Howell's petition for substantive certification. However, we grant Elon's application for injunctive relief to remedy COAH's inaction. COAH is directed to complete the proceedings on remand in accordance with the following schedule: mediation shall be completed by August 20, 2004, and if mediation is not completed by that date, it shall be deemed to have been unsuccessful; the mediator shall issue his or her mediation report by September 3, 2004; any comments regarding that report shall be submitted no later than September 13, 2004; COAH shall issue its final decision no later than October 5, 2004; and if COAH determines that transfer of the matter to the OAL is required, it shall notify the OAL that the matter is to be heard on an expedited basis. This order supersedes any conflicting COAH regulations.
NOTES
[1] Elon also filed an appeal from the dismissal of a Mount Laurel action it filed in the Law Division. Our opinion in that appeal was filed on July 1, 2004. Elon Assocs., L.L.C. v. Township of Howell, 370 N.J.Super. 475, 851 A.2d 714 (App.Div.2004).
[2] COAH's regulations include calculations of municipal affordable housing obligations, initially for the "first cycle," 1987-93, and then for the cumulative "second cycle," 1987-99. See N.J.A.C. 5:93-2.1 and 2.20 and N.J.A.C. 5:93, Appendix A. The substantive rules for the "second cycle" were subsequently extended until May 5, 2004, see 31 N.J.R. 578(a); 31 N.J.R. 1479(a), and then to November 1, 2004, see 35 N.J.R. 5467(a). COAH has not yet made its calculations of "third cycle" affordable housing obligations.
[3] We note that the briefs and appendices Elon submitted in support of these two appeals are virtually identical. Under these circumstances, Elon should have moved for consolidation of the appeals or, in the alternative, leave to file a single brief.
[4] We note that Elon filed a motion for direct certification of this appeal, which the Court denied.