NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1229-20

IN THE MATTER OF THE
VERIFIED PETITION OF THE
RETAIL ENERGY SUPPLY
ASSOCIATION SEEKING
WITHDRAWAL OF THE BOARD
STAFF'S CEASE AND DESIST
AND REFUND INSTRUCTIONS
LETTER AND DECLARATION
THAT THIRD PARTY SUPPLIERS
CAN PASS THROUGH RPS
COSTS UNDER THE CLEAN
ENERGY ACT, P.L. 2018, C.17.

_____

> APPROVED FOR PUBLICATION
>
> **November 18, 2021**
>
> **APPELLATE DIVISION**

Submitted November 4, 2021 – Decided November 18, 2021

Before Judges Alvarez, Haas, and Mitterhoff.

On appeal from the New Jersey Board of Public
Utilities, Docket No. EO19020226.

Bevan, Mosca & Giuditta, PC, attorneys for appellant
Retail Energy Supply Association (William K. Mosca,
Jr., Murray E. Bevan, and Jennifer McCave, on the
briefs).

Andrew J. Bruck, Acting Attorney General, attorney
for respondent New Jersey Board of Public Utilities
(Sookie Bae-Park, Assistant Attorney General, of
counsel; Daren Eppley and Paul Youchak, Deputy
Attorneys General, on the brief).

Stefanie A. Brand, Director, attorney for respondent Division of Rate Counsel (Maura Caroselli, Assistant Deputy Rate Counsel, on the brief).

The opinion of the court was delivered by

HAAS, J.A.D.

Appellant Retail Energy Supply Association[1] appeals the inaction of respondent Board of Public Utilities (Board) on its verified petition seeking withdrawal of the agency staff's January 22, 2019 "CEASE AND DESIST AND REFUND INSTRUCTIONS" letter (2019 Letter) stopping appellant's members from passing through a price increase to their fixed- or firm-rate customers when those increases were allegedly due to a statutory cost change required by operation of law. We remand the matter to the Board for further proceedings consistent with this opinion.

By way of background, the Legislature deregulated and restructured the electricity marketplace in 1999 by enacting the Electric Discount and Energy Competition Act (EDECA). L. 1999, c. 23 (eff. Feb. 9, 1999). The Act gave consumers the "retail choice" to purchase electricity generation and transmission from third-party suppliers (TPSs) or opt to continue receiving those services from their local electric public utility or basic generation service provider (BGSP). N.J.S.A. 48:3-51; N.J.S.A. 48:3-53. It also directed the

---

[1] Appellant is an organization representing third-party energy suppliers.

Board to adopt "renewable energy portfolio standards" (RPS), which required

TPSs and BGSPs to annually increase their reliance on renewable energy.

N.J.S.A. 48:3-87(d).

In 2013, the Board adopted N.J.A.C. 14:4-7.12, which states:

> (a) If a TPS signs up a customer or renews a customer for a rate that the TPS characterizes as "fixed" or "firm," or the TPS uses other language to describe the rate as not variable:
>
> . . . .
>
> 2. The TPS may not charge the customer a rate that is higher than the fixed rate during the period for which it is fixed, <u>except as permitted in N.J.A.C. 14:4-7.6(l)</u>, without the customer's affirmative consent.
>
> [(emphasis added).]

N.J.A.C. 14:4-7.6(l) states:

> The contract may not include provisions (sometimes referred to as "material change notices") that permit the TPS to change material terms of the contract without the customer's affirmative authorization <u>unless the change is required by operation of law.</u> "Material terms of a contract" include, but are not limited to, terms regarding the price . . . . Changing the price to reflect a change in the Sales and Use Tax or other State-mandated charge would be permitted as a change required by operation of law.
>
> [(emphasis added).]

A-1229-20

The Clean Energy Act (CEA), enacted on May 23, 2018, increased the RPS obligations for TPSs and BGSPs based on a percentage of retail load served. L. 2018, c. 17 (eff. May 23, 2018). Beginning on January 1, 2020, twenty-one percent of the kilowatt hours sold in New Jersey by every TPS and BGSP had to come from Class I renewable energy sources, such as solar, with percentage increases in 2025 (thirty-five percent) and 2030 (fifty percent). N.J.S.A. 48:3-87(d)(2).[2] The CEA also directed the Board to equally implement these "new solar purchase obligations . . . in a manner so as to prevent any subsidies between suppliers and providers and to promote competition in the electricity supply industry." N.J.S.A. 48:3-87(d)(3)(c). Specifically, N.J.S.A. 48:3-87(d)(3)(c) states:

> The solar renewable portfolio standards requirements in this paragraph shall exempt those existing supply contracts which are effective prior to the date of enactment of P.L. 2018, c. 17 (C.48:3-87.8 et al.) from any increase beyond the number of SRECs[3] mandated by the solar renewable energy portfolio standards requirements that were in effect on the date that the providers executed their existing supply contracts. This limited exemption for providers' existing supply contracts shall not be construed to lower the Statewide

---

[2] N.J.A.C. 14:8-2.5(b) lists the Class I renewable energy sources.

[3] SREC or "'Solar renewable energy certificate' . . . means a certificate issued by the [B]oard . . . representing one megawatt hour (MWh) of solar energy that is generated by a facility connected to the distribution system in this State and has value based upon, and driven by, the energy market." N.J.S.A. 48:3-51.

solar sourcing requirements set forth in this paragraph. Such incremental requirements that would have otherwise been imposed on exempt providers shall be distributed over the providers not subject to the existing supply contract exemption until such time as existing supply contracts expire and all providers are subject to the new requirement in a manner that is competitively neutral among all providers and suppliers. Notwithstanding any rule or regulation to the contrary, the board shall recognize these new solar purchase obligations as a change required by operation of law and implement the provisions of this subsection in a manner so as to prevent any subsidies between suppliers and providers and to promote competition in the electricity supply industry.

[(emphasis added).]

Appellant alleges that many TPSs began charging increased rates to their fixed- and firm-rate customers to cover the new RPS costs. It claims that the majority of retail contracts offered by TPSs allowed an automatic pass-through of price increases due to a "change required by operation of law."

On January 22, 2019, the Board's Energy Division Director Stacy Peterson issued the 2019 Letter to each New Jersey licensed TPS, reminding them that they would be in violation of the Board's regulations, N.J.A.C. 14:4-7.12 and N.J.A.C. 14:4-7.6(l), if they imposed a rate change price during the term of a fixed- or firm-rate contract without the customer's authorization, and then directing them to issue refunds to all overcharged consumers within five weeks. On January 25, 2019, appellant wrote to Peterson, asserting that the

CEA's plain language permitted TPSs to pass through the costs of the added RPS requirements to their customers even in fixed- and firm-rate contracts when it instructed the Board in N.J.S.A. 48:3-87(d)(3)(c) to "recognize these new solar purchase obligations as a change required by operation of law. . . ." On February 6, 2019, Peterson contacted appellant by phone and stated she would not rescind the 2019 Letter.

On February 15, 2019, appellant filed a verified petition with the Board seeking an expedited formal hearing, an order withdrawing the 2019 Letter, and a stay until the matter could be resolved.[4] Later that month, respondent Talen Energy Marketing, LLC, sought to join appellant's petition, and respondent Freepoint Energy Solutions, LLC, moved before the Board to intervene. In early March 2019, respondent Division of Rate Counsel (Rate Counsel) filed a letter with the Board naming the Rate Counsel attorneys it had assigned to represent it in connection with the petition.

The Board listed appellant's petition on the Board's agenda for its meeting on March 29, 2019. However, the minutes from that meeting reflect the Board's decision that "[t]his matter was deferred."

---

[4]  Appellant filed this pleading pursuant to N.J.A.C. 14:1-5.1 to -5.16, governing the filing and processing of petitions.

On May 22, 2019, appellant filed a letter with the Board requesting the agency address its petition at the next agenda meeting. The Board never responded.

Instead, on October 14, 2020, the Board listed the following action in its newly docketed matters: In the Matter of the Cease and Desist and Refund Instructions Letter of January 22, 2019 to Third Party Suppliers, Docket No. EO20100654. On October 19, 2020, appellant's counsel spoke to the Board's Chief Counsel, who said the Board's staff was negotiating a settlement with "some TPSs" to resolve their violations of the 2019 Letter's directives. Rate Counsel alleges that the Board never asked it to participate in these negotiations. In response, appellant's counsel renewed his request for the Board to act on the petition.

However, the Board placed the settlement in EO20100654 on its December 2, 2020, agenda for Executive Session consideration. The agenda read:

> This matter is a settlement agreement issued by way of Secretary's Letter to Third Party Suppliers in response to a Cease and Desist Letter sent by Staff on January 22, 2019 concerning certain rate increases on fixed term contracts. The Secretary's Letter provides instructions on how other Third Party Supplies may opt-into the settlement and provide refunds to affected customers.

On December 2, 2020, the Board's Secretary Aida Camacho-Welch issued a letter (2020 Letter) to all New Jersey licensed TPSs declaring that the 2019 Letter had "set forth Staff's view that changes to the solar carve-out in the [CEA] . . . were not an acceptable justification for charging more than the fixed rate."  The letter announced that, in an effort to resolve EO20100654, "Staff has developed a pathway for TPSs to reach resolution and to close out the matter" and "thereafter be released" from the 2019 Letter.  The Secretary's 2020 Letter stated:

> TPSs who charged customers a rate that was higher than the fixed rate, without the customer's affirmative consent, including because of the charges associated with the [CEA] . . . may be released from further obligations associated with the [2019] Letter, if they certify that they have taken the following actions:
>
> 1.    For any contracts that remain in effect, refrain from collecting additional 2018 Solar RPS Costs from New Jersey residential customers or small commercial customers (defined as those who utilized 11,000 kWh or less per year and hereinafter referred to as "SCC");
>
> 2.    Provide a refund to all qualifying residential customers and SCC as follows . . . .

Thereafter, the 2020 Letter detailed the specific steps a TPS was required to complete to provide an eligible overcharged customer with a timely and proper refund.  The letter also stated that "[e]ntities wishing to discuss options for substantive compliance" were "encouraged" to contact the Board,

8

and that "TPSs seeking to opt into this settlement may notify the Secretary of the Board of their intent to comply."

On January 8, 2021, appellant filed a notice of appeal from the Board's inaction on its petition pursuant to Rule 2:2-3(a)(2). That rule vests the Appellate Division with jurisdiction over claims of State agency inaction. Hosp. Ctr. of Orange v. Guhl, 331 N.J. Super. 322, 329 (App. Div. 2000). "[O]ur courts have held that undue delay in the administrative process may result in a denial of 'fundamental procedural fairness.'" Id. at 333 (quoting In re Arndt, 67 N.J. 432, 436 (1975)).

"Further, when an agency's inaction is unsupported by substantial credible evidence in the record or accompanied by no reasonable explanation[,] . . . we, likewise, may conclude an agency's inaction is arbitrary, capricious, and unreasonable." Caporusso v. N.J. Dep't of Health & Senior Servs., 434 N.J. Super. 88, 109 (App. Div. 2014) (citing Gilliland v. Bd. of Review, 298 N.J. Super. 349, 354-55 (App. Div. 1997)). Accordingly, "[i]f a state administrative agency fails to complete its proceedings in a timely manner, a party adversely affected by such inaction may apply to this court for an order to compel the agency to act." In re Mar. 22, 2002 Motion to Dismiss and Intervene in the Petition of Howell Twp., 371 N.J. Super. 167, 187 (App. Div. 2004).

Applying these principles, we are constrained to conclude that the Board's unexplained failure to address appellant's petition for over twenty months was arbitrary, capricious, and unreasonable. The Board does not deny that it never acted on appellant's petition or the requests of other parties to intervene in the matter. Instead, it apparently offered a "resolution" of the issues raised in the petition to unidentified entities in a separate docket item without providing notice and an opportunity to be heard to the parties to appellant's petition. Under these circumstances, a remand is required.

In remanding this matter to the Board, we recognize that ultimately the issue to be determined regarding the petition is one of statutory interpretation, normally a question of law we would address de novo had the Board acted on appellant's petition. See, e.g., Saccone v. Bd. of Trs. of Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014) ("Statutory interpretation involves the examination of legal issues and is, therefore, a question of law subject to de novo review."). However, our function as an appellate court is to review the decision of the Board, not to decide the legal issue tabula rasa. See Zirger v. Gen. Accident Ins. Co., 144 N.J. 327, 330 (1996) (noting that "Ordinarily, our interest in preserving judicial resources dictates that we not attempt to resolve legal issues in the abstract.").

10

Therefore, we direct the Board to consider and resolve appellant's petition within sixty days from the date of remand. If the Board determines to transfer the matter to the Office of Administrative Law (OAL) for a contested case hearing, it shall notify the OAL that the matter is to be heard on an expedited basis.

Remanded to the Board for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11

A-1229-20